NOVEMBER 3, 1801.

# James Speed v. John Wilson.

*Upon an appeal from a decree of the Danville District Court.*

An entry "on the dividing ridge between the waters of Kentucky and Dick's river to include part of both waters and his improvement," is too vague and uncertain, and can not be sustained.

In this, as in the generality of contests for land, it is undoubtedly proper first to examine the validity of the complainant's claim; because it is an established maxim, "that complainants must rely on the strength of their own title, and not on the weakness of that of their adversaries."

The location of the complainant's settlement rights with the commissioners, and with the surveyor, are in substance the same, to-wit: On the dividing ridge between the waters of Kentucky and Dick's river, to include a part of both waters and his improvement. This court can not conceive that the land law made it the duty of subsequent adventurers to search the whole of such a lengthy dividing ridge to find the complainant's improvement, that they might be enabled to avoid it, and his location contains no other direction which could answer the purpose; besides, had it been accidentally found, it is not satisfactorily proven that it had any mark by which it could have been distinguished from other improvements. Indeed, the land law seems to favor settlement rights, in only requiring that their locations should be described as particularly as may be. But the complainant's location

does not even come up to this requisition, taken in the most favorable sense. It is in testimony that the creek on which the improvement in question was made had received a name long before his location was made, and might have been called for by that name. But if the case had been otherwise, certainly a course and distance from some well known place (say the mouth of the Hanging fork of Dick's river) might have been given, which would have led much nearer to the improvement than the whole length of the dividing ridge, which is called for; or some other description might easily have been inserted which would at least have pointed out the neighborhood in which the improvement was situated. The only circumstance which could have cured this apparent legal defect in the complainant's location would have been the notoriety of his improvement; for, had his improvement been known to the greater number of those who were conversant with that part of the country before and at the time the location was made, then there might not have been any other object in its vicinity, of which inquirers could have obtained more certain information. If the complainant had obtained his right for having settled or resided on the premises, perhaps the court would be authorized to presume that his improvement had really acquired the degree of notoriety which has been mentioned. But the right was granted for having made a crop of corn elsewhere in the country, and the call in the location for his improvement, like a call for any other object, ought only to give validity to the location, so far as it appears from testimony that it was known, or might with certainty have been found by other adventurers. The court finds that Andrew Cowan and Robert Wilson, in February, 1776, assisted the complainant in raising the walls of a cabin to the hight of five or six logs, and in belting some timber on the land he now claims at or near the head spring of White Oak creek, and that a few days after John Daugherty saw the improvement, and had sufficient reasons for believing it was made for the complainant. And the court further finds, that about the same time, Azael Davis and David Finley encamped a night on White Oak creek with Wilson, and conceived that he was making an improvement or improvements in the vicinity. Also, that about a year afterward, Bartholomew Fenton, Daniel Hawkins, and George King saw the cabin, and had received information that it was made for or by the complainant. But it is not proven that any of those persons were in that quarter of the country about

the time his locations were made, or about the time the appellant made his survey, and the presumption is strong that the greater number of them were not. If, however, it appeared that all of them had continued ever since in that part of the country, the court could not thence infer that other adventurers might certainly have obtained information where the complainant's improvement was to be found; for this court has formerly adjudged, and it still seems necessary that an object called for in a location must at least be known to the generality of those who were conversant in its vicinity, to give it reasonable notoriety, or, in other words, to render a location valid which is otherwise defective in description.

These being the sentiments of the court, it is scarcely necessary to observe that the claim of the complainant can not be sustained by a court of chancery, to the destruction of the elder legal grant of the defendant, and consequently that the decree of the district court is erroneous.

Wherefore, it is decreed and ordered, that the said decree of the district court be reversed, and that the complainant's bill, who is the appellee in this court, be dismissed, and that he pay unto the appellant the costs of this appeal. And it is further decreed and ordered, that the suit be remanded to the said district court that it may enter this decree on its records, and make such other and further decrees and orders in the said suit, conformably to this decree, as it shall appear that law and equity require; which is ordered to be certified to the said court.