King *v.* Mabry and Henry.

J. M. KING *et al. v.* G. W. MABRY and JOHN F. HENRY.

1. CHANCERY PRACTICE AND PLEADING. *Bill to enjoin trespassers. Possession must be bona fide.* A party suing to enjoin trespassers, claiming to be in exclusive possession of a tract of land, must occupy and hold it *bona fide,* and by such use as is usual, and the land susceptible of.

2. SAME. *Not being in possession, must show title.* Not being in possession, such a party must show a connected chain of title in order to sustain his prayer for an injunction.

3. SAME. *Boundary lines.* *Acquiescence.* Long claim of a certain line openly by a party, and acquiescence, in this case from twenty-five to forty years, by adjoining land owners, will fix the boundary at the line thus practically located, and enable a party having title to the land thus claimed by himself and those under whom he holds, to sustain a bill to enjoin a trespasser, and protect himself from any one not having superior title.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. O. P. TEMPLE, Ch.

HENDERSON & JOUROLMON for complainants.

W. M. BAXTER for defendants.

FREEMAN, J., delivered the opinion of the court.

The original bill by King is filed, claiming to be seized in fee of the tract of land in controversy, as described in a certain lease to his tenant, Clifton, and that he had been in exclusive possession of the same by himself and tenant since about the first of March, 1874, up to filing his bill, November 29, 1875. He claims to have enclosed a portion of the land and put the same in cultivation, and that while so in possession and his tenant was preparing to build a house to live in on the land, Mabry, the tenant and agent of Henry, forbid him doing more work on the land, and has continued to commit trespasses on the same, by removing the fence, and cutting timber, and attempting to enclose the land, so as to oust complainant of his assumed possession.

The prayer of the bill is to enjoin Mabry and Henry from disturbing complainant's possession, that he and his tenant be quieted in their possession, and the title settled as between the parties.

The Bill is either an ejectment bill, relying on the superior title alleged by complainant, or must° stand as in the nature of an action of trespass, seeking to restrain Henry or his tenant from disturbing the possession of complainant.

It is not necessary, and we will not do so, to go into a review of the chain of title from the original grantor under which complainant claims the land, to show from this record, that he has failed to make out such a connected and continuous title to the land, as would sustain an action of ejectment, or entitle the complainant to recover on the strength of his title. We do not understand his learned counsel very earnestly to insist on this, and if it was insisted on it could not be maintained on the papers purporting to make the title as shown.  We may dismiss this aspect of the case by saying, complainant entirely fails to make out his claim of seizin in fee of the premises in dispute.

We think it equally clear, that he has failed to make out his claim of exclusive possession, or any claim whatever of being *bona fide* in possession and occupation of the land.  There is, as far as we can see, no proof in the record directed to sustain this allegation of the bill—no witnesses even being interrogated on this subject.

The complainant, we suppose, has expected to meet this, by what is a most strained construction of defendant's answer and cross-bill, in which he might seem to admit possession, by the use of the word "oust" complainant from the land. When taken in its connection and the whole answer looked to, it only amounts to this: Respondent most positively denies the fact of possession of the land, as complainant claims in his bill, and says the allegations are false, to use the strong language of the answer. He then asserts in equally positive terms, that he and those under whom he claims are seized of the land in fee, and have had the *exclusive* adverse possession of it for more than forty years under claim of title.

It is true he goes on to say, substantially, in reply to King's claim of possesson, that he had clandestinely cleared up about ten feet square, and sowed it in lettuce and mustard, leaving it to grow without cultivation. But this effort to obtain possession, respondent says, was treated as a joke. This, he says, was all the possession King ever had of the land until he leased it to Clifton, which lease bears date September 15, 1875. It is admitted that Clifton, the tenant, trespassed on the land, and prepared to cultivate some of it, and to build a house on it. Then he ordered his tenant to extend his own fence so as to include the lettuce bed, and removed the fence, etc.

Taking all this, it certainly falls short of admitting that complainant was ever in fact in possession of the land, and cannot fairly be construed into such an admission—most certainly the respondent did not intend

to contradict by this statement his positive denial of such possession—and only intended and fairly does admit the possession by the mustard and lettuce patch, and a trespass by clearing up land, and preparation for building a house, which was frustrated by the extension of his own fences so as to include the land attempted to be cleared, and intended to be occupied by cultivation.

In this view, which is the only fair construction of the record, complainant would have no standing in court, even as against a trespasser, for in such case, he must have the actual possession of the land, or be prepared to show a legal title, giving constructive possession. *Snoddy* v. *Kreutch,* 3 Head, 303.

It can hardly be necessary to cite authorities to show that such an occupation of a tract of land, as is admitted by respondent, a clandestine plant bed of ten feet square in the woods, whether inclosed or not by fence, could not be held such as would give the party a legal possession of the land. To be possessed of land the occupation must be real, not illusory—and evidenced by such public acts of ownership, as a man would usually exercise over such property, as enclosing a substantial portion of it, or erection of other improvements upon it, showing an intention to use it as owner, in such way as the character of the land was susceptible of. In the language of the Supreme Court of North Carolina, cited in *West* v. *Lanier,* 9 Hum., 771: "Possession of land is denoted by the exercise of acts of dominion over it, in making the ordinary use and taking the ordinary profits of which it is sus-

ceptible, such acts so repeated, or we may add, continuous, as to show they were done in the character of owner and not as an occasional trespasser." No such state of things can be predicated of so insignificant a fact as sowing a lettuce bed on a spot of ground in the woods, ten feet square, and this is as much as the case before us shows.

In any aspect of the case, the complainant fails to make out title to relief, and the decree of the Chancellor must be reversed, and his bill dismissed with costs.

The respondent, however, has filed his answer as a cross-bill, and seeks active relief on that, asking that complainant's claim be declared a cloud on his title, and his trespasses or threatened disturbances be enjoined.

The respondent to this cross-bill has waived objection to the jurisdiction in the Chancery Court, and by denying the allegations of complainant, has put him to the proof of his case. In this aspect of the case is found the most difficulty, and that to which we have given the most earnest attention.

The complainant in the cross-bill must show either a title, as was required of complainant in the original bill, or that he had actual, real, and *bona fide* possession of the land in dispute. As to the latter, we need but say, that he has not shown the actual possession of the land in contest, as it is timber land, unenclosed, and complainant and those under whom he claims have only used it by cutting timber on it. It is true there is a farm on the land, west of where

complainant in the original bill insists the true line of Henry's land is, which has been cultivated, at least part if not all of it, for many years. But the claim of defendant, as shown by the lease to his tenant, is only to the fence enclosing this farm.

Complainant must then show title, and consequently a constructive possession, entitling him to relief against the trespasses of the claimant, or he fails. We will briefly state the conclusion we reach as to the facts on this aspect of the case, without going into a detailed review of the statements of the testimony by which these conclusions are sustained. Suffice it to say, that we have carefully examined all the testimony, and feel no doubt of the correctness of our conclusions.

We think it can hardly be doubted, that by the title papers, and the calls on their face as to courses and distances, and possibly for timber or natural objects, the true north and south line of the original White and Cosby grant would be where complainant claims it to be, and would not include the land in dispute, as claimed by King.

To meet this, however, the complainant presents by a large preponderance of the proof, in fact with no direct contradiction that meets it, the fact, that the parties under whom he claims, have claimed the north and south line to be where he now insists it is, that is, the extreme western line, as shown on the plats furnished us, for upwards of forty years. That such has been recognized and asserted as the western or north and south line of the White and Cosby tract, we think is proven by a large preponderance of the testimony.

The proof on this aspect of the case is found, not only in the fact of the claim of the Odells, under whom Henry has his title, and the use of the land up to or nearly so, to the line, but has been conceded by all the land owners who own land immediately adjoining the land in controversy. Cox and his heirs, who held a portion of the White and Cosby grant south of it, conceded it beyond all question, and claim up to the assumed line of the Odell occupation and claim, and recognize, and have done so for many years, the north and south line, with the Pine Knot and Rock corner, as the western boundary of the White and Cosby grant.

The owners of land, known as the Givens grant, lying immediately west of the line mentioned, are shown to have some of them called for the line, and all to have recognized it as the true line. It is true the deeds of the parties who own lands immediately west of the land in dispute, are not found in the record— but the fact is proven without objection, (if any could have been sustained) that they did recognize this Pine Knot and Rock line, as the north and south line of the Cosby grant. Then William Walker, who owns the land east of that line, and north of the Odell claim, the disputed land, swears the south-west corner of his land is the rock corner, and proves he has known that as the line, and it has so been recognized ever since he can remember. In this he is corroborated by Swan, who owns the land along and west of the line, and a number of other witnesses.

So we have the question presented, as to what is

the legal result of this long recognition of this line by the contiguous owners of the lands, in connection with the equally long and continuous claim of the Odells to the same, as their boundary, upon the rights of a mere trespasser, as King must be treated. Can the parties owning contiguous lands, in connection with a party claiming the land adjoining to them, by continuous and uninterrupted claim and recognition for so long a time, by practical location so establish and fix a line as their boundary, as that a trespasser with no title shall be bound by it, and not be permitted to say in his favor, that it is not the line or boundary of the land of the parties thus acting? This is the real question presented in this aspect of this case.

It has long been settled in our law, that the line or boundary of land may be shown or identified, by acts and admissions of the party owning the land, clearly and satisfactorily made out, and understandingly made; and even hearsay testimony of the statement of such parties, as well as general reputation in the neighborhood that a particular line or tree, even though not the one called for as a corner, is receivable for this purpose. *Davis* v. *Jones*, 3 Head, 603; *Polk* v. *Robertson*, 1 Tenn. R., 456; *Holland* v. *Overton*, 4 Yer., 482.

It is also settled that parties owning adjoining lands, where there is no certain and established line known to them, may by consent establish a boundary or line between themselves, and this will be valid and binding between themselves. *Lewallen* v. *Overton*, 9 Hum., Cooper's Ed., 75 *Rogers* v. *White*, 1 Sneed, 79; *Davis*

**v.** *Jones,* 3 Head, 603. Such a line so established is called a conventional line. It is also settled by the above and many authorities, that such an agreement as to the line may be shown by long acquiescence of the parties concerned, and its repeated recognition of the acts and declaration of the parties.

Conceding these principles, we think it follows inevitably, that a mere trespasser, and certainly no one, unless it may be a third party with superior title, could be allowed to intervene, and overturn what had been thus settled by the parties immediately concerned. As to such a party at least, having no title, the state of things thus agreed on must be held to be the true line, and he, as showing no right, must be bound by it.

It is proper here to say, that it is beyond all question, that Henry when he purchased this land some years before this contest commenced, was shown the lines by Odell, under whom he claims, and had this north and south line pointed out to him distinctly as the boundary of the land which he was about to purchase, and that he certainly in good faith so purchased, with no suspicion of any contrary state of things. The long claim and recognition of the adjoining land owners, acquiescing in this line, and their continued acquiescence up to the present time would, it seems, well warrant him in the claim he makes. Surely they are estopped, or would be on the facts, from interfering with his land so purchased. It is certain a mere trespasser or party without title, could in no aspect of the case stand in better condition than they would.

Without specifically answering the ingenious arguments of counsel as to other features of the case, we content ourselves by saying, they have been fully considered, and do not in any way, as we think, militate against the conclusion we have reached.

The result is, the original bill must be dismissed, and complainant in the cross-bill entitled to a decree quieting his possession, and enjoining King from interfering with the same. King will pay all costs.

Judge TURNEY being incompetent from relationship, took no part in the decision of this case.