# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION.

---

### NASHVILLE, DECEMBER TERM, 1921.

---

## (Continued from Vol. 146.)

---

H. H. DAVIS *et al. v.* LOUISVILLE & N. R. Co.*

SAME *v.* PAYNE, Agent, etc.´

(*Nashville.* December Term, 1921.)

1. WATERS AND WATER COURSES. Lower lands burdened with servitude of receiving water from higher lands.

Lands lying at a lower level are burdened with the servitude of receiving all water which naturally flows down to them from adjoining higher lands, and this applies not only to living streams but to surface water. (*Post, pp.* 6, 7.)

---

*As to character of nuisance as continuing; when cause of action arises; successive actions, see note in L. R. A. 1916E, 997.

On liability of railroad for conducting surface water through its embankment and onto the property of adjoining owners, see note in 12 L. R. A. (N. S.), 680.

On prescriptive right to maintain nuisance relative to waterways, see note in 53 L. R. A., 903.

Davis v. Louisville & N. R. Co.

2. WATERS AND WATER COURSES. Duty of railroad to provide means for safe passage of surface waters such as might be anticipated.

It is the duty of a railway company in constructing and maintaining a railroad to provide sufficient means for the safe passage of accumulated surface waters, and this applies not only to ordinary rain falls, but to such as have occurred within past experience and observation, or might reasonably be anticipated from the physical surroundings and climatic conditions. (*Post, pp.* 6, 7.)

3. WATERS AND WATER COURSES. Right to have water flow upon lower lands may be lost by maintenance of artificial embankments for twenty years.

The right of owners of land to have surface water flow therefrom upon lower lands may be lost by the maintenance of artificial embankments on lands of servient estate for twenty years, and the servient estate may acquire counter easement to flow back water upon the lands of the dominant estate by such embankments. (*Post, pp.* 6, 7.)

Case cited and approved: Railway v. Mossman, 90 Tenn., 157.

4. WATERS AND WATER COURSES. Prescriptive right to back water upon higher land must be exercised so as to indicate claim of right.

As prescriptive right on part of owner of lower land to back surface water upon upper land is founded upon the supposition of a grant, it must be exercised or made use of in such a way as to indicate that it is claimed as a right. (*Post, pp.* 7, 8.)

5. WATERS AND WATER COURSES. Prescription runs against owner of higher land from time cause of action arises.

Prescription cannot begin to run against the right of an owner of higher land to have the surface water flow upon lower land, because of the maintenance of embankments backing up the water, until a cause of action arises, and it does then begin to run. (*Post, pp* 7, 8.)

Davis v. Louisville & N. R. Co.

6. **WATERS AND WATER COURSES.** Prescription runs against high-er owner from time culvert in railroad embankment proves insufficient.

While a cause of action arises at once upon the construction of an embankment of a permanent character which necessarily causes injury by backing up water, where a railroad in constructing an embankment recognized the right of the upper landowner by con-structing a culvert, there was no cause of action, and prescription did not run against the upper owner, until experience showed the culvert to be insufficient to take care of the natural accumulation and flow of water. (*Post, pp.* 8-12.)

Case cited and approved: Sullens v. Chicago, etc., R. R. Co., 74 Iowa, 659.

Case cited and distinguished: Hocutt v. Wilmington, etc., Railroad, 124 N. C., 214.

7. **WATERS AND WATER COURSES.** Railroad claiming prescriptive right to maintain embankment has burden of proof.

In action for damages from water backed up by railroad embank-ment containing insufficient culvert, the burden was on the rail-road company claiming a prescriptive right to show when the culvert first proved insufficient, and to show that more than twenty years before the cause of action arose the embankment and culvert actually caused overflows, and that such condition con-tinued throughout that period. (*Post, pp.* 12-15.)

Cases cited and approved: Railroad v. Hays, 79 Tenn., 382; Gulf, etc., R. Co. v. Moseley, 20 L. R. A. (N.-S.), 886; Irvine v. Oelwein, L. R. A., 1916E, 997.

8. **ADVERSE POSSESSION.** Must operate against persons capable of making grant.

To establish a right by prescription the acts by which it is sought to establish it must operate against persons capable of making a grant and in a condition to resist such acts. (*Post, p.* 15.)

Cases cited and approved: Ferrell v. Ferrell, 60 Tenn., 329; Saunders v. Simpson, 97 Tenn., 382; McKinney v. Duncan, 121 Tenn., 265; Ferguson v. Prince, 136 Tenn., 543.

9. **ADVERSE POSSESSION.** Presumed in absence of evidence that persons against whom prescription claimed capable of suing.

While it is part of the case of one claiming a prescriptive right to show affirmatively that owners of servient estate during the prescriptive period were competent to convey title, in the absence of any proof on the subject it will be presumed that they were capable of suing or acquiescing in the prescription, and the fact that they were not *sui juris* or capable of granting a right must be pleaded and proved. (*Post, pp.* 15-17.)

10. **ADVERSE POSSESSION.** Claimant must show facts necessary to confer title.

One claiming title by adverse possession must make out his case by showing the facts necessary to confer title. (*Post, pp.* 15-17.)

Cases cited and approved: Chaney v. Moore, 41 Tenn., 48; Cook v. Cook, 57 Tenn., 464; Alvis v. Oglesby, 87 Tenn., 172; Coal Co. v. Daniel, 100 Tenn., 65; Gross v. Disney, 95 Tenn., 592; Jones v. Coal Co., 133 Tenn., 159.

---

FROM MONTGOMERY.

---

Appeal from the Circuit Court of Montgomery County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. J. W. STOUT, sitting by interchange.

DANIEL & SAVAGE, for appellants.

AUSTIN PEAY, for appellee.

MR. L. D. SMITH, Special Justice, delivered the opinion of the Court.

These causes are before us on petitions for *certiorari* filed on behalf of the defendants to have reviewed and

reversed the judgment of the court of civil appeals. In the circuit court the suits of the plaintiffs were dismissed, after the introduction of the evidence, upon motions made by the defendants for peremptory instructions. On appeal to the court of civil appeals this action was held to be erroneous and the causes remanded for a new trial. The cause of action is the same in each case, viz., damages for the alleged destruction of the plaintiffs' crops by an overflow of water caused by the construction of an embankment with an insufficient culvert. The case against the Louisville & Nashville Railroad Company is for damages accruing to the plaintiffs in the years 1916 and 1917, and the case against the defendant Payne as Agent of the United States government is for damages alleged to have accrued in the year 1918. The same questions are presented in both cases, and therefore they may be properly disposed of in one opinion, having been heard together in the lower courts.

The plaintiffs are the owners as tenants in common of a tract of land of about one hundred acres in Montgomery county, bounded on the north by the Cumberland river. The Louisville & Nashville Railroad was constructed through this land, dividing it into two fields of about equal size, the railroad paralleling the river. The land was low bottom land; water falling and flowing on it originally drained by natural flow toward the North to the Cumberland river through or by means of a natural channel. When the railroad was originally constructed it was placed over this natural drainage upon a trestle. Prior to the year 1896 this trestle was removed and an embankment constructed with a culvert therein. The land being low was subject to overflow from the Cumberland river which backed the water through this culvert to the upper side

of the embankment, and the culvert being insufficient in size to take care of the water which accumulated above and which was backed up by the Cumberland river gradually caused the land to fill up on both sides of the embankment, so that at the time the suits were brought the openings in the culvert on either side were below the level of the land itself.

That the plaintiffs' crops were damaged by the overflow of water is not a question of dispute here, and the questions presented in the record arise upon the plea of the defendants to the effect that the embankment on its right of way through the lands adjoining plaintiffs' land, and the culvert which runs through this embankment, had been constructed and maintained continuously and without interruption for more than twenty years before the damages alleged occurred, and that it had acquired by prescription the right to maintain the embankment and culvert, and consequently the right to overflow the plaintiffs' land. Therefore the plaintiffs were not entitled to recover for any injuries occurring to their crops by reason thereof.

The fact is established beyond controversy that the railroad company, more than twenty years prior to the institution of these suits, had constructed this particular embankment and culvert, and they had been maintained for a period of more than twenty years in that condition, but it is not conclusively shown that the land was caused to overflow or to have inflicted thereon any positive injury prior to the year 1901, at which time the filling up of the land was first observed.

It necessarily follows from the proof in this case that the cause of the plaintiffs' injuries was created and placed upon this land more than twenty years before the accrual

of the damages sought to be recovered here, and therefor, if the prescriptive period commenced to run at the date of the creation of the cause of the damage, then the cases were properly dismissed upon motion for peremptory instructions, but if said prescriptive right began to run from the date of the first actual injury to the property, then the motion was improperly sustained, since the proof does not conclusively show that the first injury was more than twenty years from the commencement of the accrual of the action. It is a well-established rule of law in this State that lands lying at a lower level are burdened with the servitude of receiving all waters which naturally flow down to them from lands adjoining and upon a higher level, and this rule of law has been applied not only to living streams but to surface water, and thereunder it is the duty of a railway company in the construction and maintenance of its railroad to provide sufficient means for the safe passage of accumulated surface water, and this is not limited merely to the volume of water caused to flow from ordinary rain fall but such as had occurred within past experience and observation, or such as might reasonably be anticipated from the physical surroundings and climatic conditions. But this right is one which may be lost by the maintenance of artificial embankments upon the lands of the servient estate for a period of time sufficient to presume a grant, that period of time being under all of our cases twenty years, and the servient estate may acquire a counter easement to flow back water upon the lands of the dominant estate by the erection and maintenance of an embankment impeding the natural drainage from the lower lands and back such surface water upon the higher lands. *Railway* v. *Mossman,* 90 Tenn., 157, 16 S. W., 64, 25 Am. St. Rep., 670.

This prescriptive right upon the part of the owner of the lower land to back the flow of water on the upper land, being founded upon the supposition of a grant, must necessarily be exercised or made use of in such a way as to indicate that it is claimed as a right. In other words, a right of action must accrue from the act performed by the owner of the lower land in favor of the upper landowner, and no prescription can begin to run until a cause of action arises, and it does begin to run when such cause of action arises.

"If the enjoyment is consistent with the right of the owner of the tenement, it confers no right in opposition to such ownership. Adverse user is defined as such use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right. It is essential that there be such an invasion of the rights of the party against whom the right is claimed that he would have a cause of action against the intruder, and the prescriptive period does not commence to run until there is such an invasion." 9 R. C. L., 777.

The argument made here by the railroad company is that the right of the upper landowner as against the owner of the lower land is merely that the flow of water may not be impeded, and that, inasmuch as the construction of the embankment with an insufficient culvert operated to impede the flow of water, a cause of action immediately arose, and this condition having continued for a period of more than twenty years, the right of the upper landowner has been lost by prescription. This argument is only partially sound. It overlooks the real right of the dominant estate. While his right may be expressed as being one entitling

him to allow the water to flow over his land in the natural way, the real right is that his land be not injured by interference with this flow of water. In this case the railroad company had the right to build its embankment without any culvert or with an inadequate culvert and to use its land in such way as it saw proper, so that it did not thereby cause injury to the adjacent owner. The adjacent owner could not complain, and he had no cause of action until some actual injury resulted to him from the use made by the railroad company of its own property.

It is undoubtedly a sound rule of law, and it is in accord with a majority of the cases on that point, that whenever an embankment is of a permanent character, and its construction and maintenance are necessarily an injury, a cause of action at once arises. If no culvert had been constructed in this embankment, all water falling upon this land would necessarily fail to flow and be impeded, and since we know that water does fall and flow and necessarily create an injury, it might well be said that a cause of action arises immediately upon such condition being created. The Mossman Case, supra, is authority for this conclusion. In that case, by the construction of an embankment and its maintenance without culvert or other means for the passage of water, surface water had been backed upon the plaintiff's lands, rendering it unfit for agricultural use, and it appeared that the embankment had been constructed thirty years before the suit was brought, and during all of that time the surface water had been backed upon the plaintiff's land. From this state of facts it was held:

"There arises a presumption that the right to flowage upon the lower lands has been, by grant, surrendered, and

that the lower lands have, by grant, secured the right to accumulate surface water upon the lands lying adjacent and subject to such an easement."

In the absence of any provision for taking care of the natural flowage of surface water the upper landowner is immediately advised of the adverse nature and claim being made to overflow his lands. The element of adverseness is made to at once appear. It is the immediate assertion of a right adverse to the right of the upper landowner which, if continued for a period of twenty years, becomes complete by prescription.

That is not the case we have before us. The railroad company in the construction of its embankment left an opening which, it has subsequently developed, was insufficient to take care of the natural flow of the water, but by the construction of the culvert the railroad company recognized the right of the upper landowner to have the water flow over the railroad company's property. We may assume that this opening was insufficient for all kinds of conditions, but the owner of the upper land cannot be expected to know that the culvert was insufficient, and he would have no right of action unless he could show that it did necessarily interfere with his rights. Indeed and, in fact this culvert may have been entirely sufficient for the conditions which actually arose immediately and for some years thereafter. It may have been sufficient to take care of the water which accumulated on the upper lands for a period of four or five years. Whether it was or not depends upon the seasons controlling the amount and volume of water. It could not have been foreseen with any degree of accuracy until some actual damage to the property was occasioned thereby that the culvert was insufficient, and

therefore it could not be said that the railroad company was asserting a claim adverse to the rights of the upper landowner. *Sullens* v. *Chicago, etc., R. R. Co.*, 74 Iowa, 659, 38 N. W., 545, 7 Am. St. Rep., 501.

The mere construction of the embankment did not constitute an entry upon the plaintiff's property; it was of itself no trespass on or invasion of his rights; it was but use of his own property which became an invasion of the plaintiff's rights upon the maxim *"sic utere tuo ut alienum laedas;"* it was but the maintenance of a private nuisance which of course afforded no right of action to plaintiff until actual injury resulted therefrom. As was said by the supreme court of North Carolina in *Hocutt* v. *Wilmington, etc., Railroad,* 124 N. C., 214, 32 S. E., 681, wherein it was claimed that the plaintiff was barred by the statute of limitations in an action for damages which resulted from the digging of ditches, the ditches having been dug prior to the period of the statute of limitations, whereas the damages occurred a short period of time before institution of suit:

"It makes no difference when the ditches were dug, provided they did not injure the plaintiffs. The defendant had a perfect right to dig its ditches or use its land as it saw fit, without injury to another. The digging of the ditches, or the building of the road, or any other act done five or twenty or fifty years before, was utterly immaterial to the present controversy, as, in themselves, they constituted no cause of action. While the plaintiff might, under certain circumstances, have enjoined the commission of an act that threatened irreparable injury, he could not have maintained an action for damages that he had not sustained, and might never sustain. It is well settled that the injury

is the cause of action, and that no statutes of limitation can begin to run before the cause of action accrues."

The supreme court of Oklahoma said, in a similar case:

"It strikes us as unreasonable to argue that a cause of action is barred by limitation before it arises. The facts in the case at bar do not disclose that plaintiff ever sustained any damage prior to the overflow complained of, and if the embankment in question, be it ever so negligently constructed, had been maintained for a century, the plaintiff would have had no cause of action for damages sustained until they were sustained; hence his right of action necessarily dated from the date of his injuries."

In *Railroad* v. *Hays,* 11 Lea, 382, 47 Am. Rep., 291, the railroad company relied upon an easement to overflow the lands of the adjacent landowner by reason of having constructed an embankment and maintained it for more than twenty years, but this defense was denied, and the court recognized the principle that to accomplish a prescriptive right the act relied upon must have been done in such a way as not to have recognized the right of the other. It appeared in that case that at the time of the construction of the road a ditch was made which carried off the surface water. Thereby the railroad company recognized and obeyed its obligation to protect the lands from overflow. The rule announced in that case was recognized by this court in the Mossman Case, the court in the latter case saying: "This was a recognition of a servitude in favor of the estate upon a higher level." Where a railroad company constructs an embankment upon lower land and undertakes to provide a means for the escape of the surface water above, it thereby recognizes its obligation to protect the rights of the owner above it, and it cannot be said that,

because the provision made is insufficient to take care of all future accumulations of water, this recognition of the adjacent landowner's rights is not recognized. Of course logically a different rule applies when actual injury results from the insufficiency of the culvert, for in such a case the maintenance of an insufficient culvert is as much an infringement upon the rights of the upper landowner as if no culvert existed at all, and its subsequent maintenance operates as a repudiation of the rights of the adjacent landowner. We conclude, therefore, that we cannot begin to count the prescriptive period from the date of the construction of the embankment, but that it must be counted from the date when experience showed the culvert to be insufficient. It does not follow that the counting of the period must begin when it was first noticed that the land began to fill, but from the period when the culvert proved to be insufficient to take care of the natural accumulation and flow of water. The proof here does not show when this occurred. The burden of showing it is cast upon the defendant railroad company. Before it can rely upon a presumption of a grant, it must be made to appear that at some period more than twenty years before plaintiff's cause of action arose its embankment and culvert actually caused plaintiff's land to overflow, and that this condition continued throughout the period.

The exact question involved and above decided is not presented in any of the reported cases heretofore decided by this court. The decisions from other States are not uniform, as will appear from examination of the notes published in connection with the case of *Gulf, etc., R. Co.* v. *Moseley,* 20 L. R. A. (N. S.), 886, and *Irvine* v. *Oelwein,* L. R. A., 1916E, 997, 1074. But the principle of our cases

as found in *Railroad* v. *Hays,* and *Mossman,* and other cases, is in accord with the view here stated. There is nothing in the case of *Maxwell* v. *Railroad* opposed to this view. That case grew out of conditions arising after the railroad company had acquired a prescriptive right to maintain its embankment over the plaintiff's land, and the right of action is based upon the claim that it was the duty of the railroad company, by reason of changed conditions resulting from the construction and mainte-nance of the embankment, to provide ditches either along by the side of its track to carry the water off of the plain-tiff's land and away from its natural course, or to dig ditches to take care of the water which passed through the culvert. It was held that the railroad company was not required, under these circumstances, to provide ditches on the other man's land. The court said:

"Suppose that, in course of time, by natural deposits, as actually happened, the lower land became so filled up that the water would not flow away, and as a result of this defendant in error's land was flooded. Could the railway company be held responsible? We think not, except to the extent that the higher embankment, raised within the last nine or ten years, caused such backing up. We do not find any evidence in the record that meets this phase of the case. A new situation developing by the filling up of the lower land, the duty was devolved upon the defend-ant in error either to allow his land to retain the water on the north, or to let it away on the south, by digging a ditch. If the water incommoded the railway company, the duty would be devolved on it to dispose of it by ditches drawing it away. In other words, under the new *status* caused by the filling up of the land on the south side of the

track, the law as to the lower land being subservient to the higher land would be held in abeyance, or would not apply, because, under the case stated, there would be no lower land. The situation then would be the same as if the railway line had been built through a swamp. If the railway company desired to drain the water away for its own protection, it could do so; but having acquired the right by prescription to maintain its embankment, it would not be liable to the owner therefor, except to such extent as it might be shown that injury had been effected by the subsequent raising of the embankment."

In this case the filling up of the land was due to an insufficient culvert, and the right of plaintiff to recover depends upon whether the railroad company had acquired a prescriptive right, and that depends upon the date of the first overflow of the land of the plaintiff by reason of the embankment and culvert that was constructed and the continued maintenance of that condition for a period of twenty years.

The court of civil appeals reversed the action of the circuit court and remanded these causes, upon the ground that it was incumbent on the railway company to show that during the twenty-year period prescription claim the owners of the land were capable of contracting an easement, and that they had an estate in the land which the defendant claims to have acquired, and that there was no proof that such was the case.

It is quite true under the rule of law which has frequently been applied by this court that in order to establish a right by prescription the acts by which it is sought to establish it must operate against persons capable of making a grant; the person owning the estate affected must be in a condition to resist it. *Ferrell* v. *Ferrell*, 1

Baxt., 329; *Saunders* v. *Simpson,* 97 Tenn., 382, 37 S. W., 195; *McKinney* v. *Duncan,* 121 Tenn., 265, 118 S. W., 683; *Ferguson* v. *Prince,* 136 Tenn., 543, 190 S. W., 548.

The precise question presented by the assignment of error based upon this conclusion of the court of civil appeals has not heretofore been passed upon in any reported decisions of this court. It has been generally said in some of the cases that it is a part of the complainant's case to show affirmatively that during the prescriptive period the owners of the servient estate were competent to convey title, and undoubtedly that is true, and in the cases where so stated was strictly accurate. But it is likewise true that adverse possession under the statute of limitations will not confer title where the owner of the land is under disability, and one claiming title by adverse possession must necessarily make out his case by showing the facts necessary to confer title, but it does not follow that a case is not shown in the absence of proof that the owner of the land was not in position to be bound by the adverse user. The necessary facts as to the use of the property for the prescribed period of time being shown, we might well presume that the owners of the property were *sui juris* and possessed of such title as could be acquired by adverse user. We have consistently held, in dealing with the statute of limitations, that the burden of proof to establish an exception to the operation of the statute is upon him who asserts it. The exception must even be pleaded. A right by prescription is so similar to one acquired under the statute of limitations that we are of opinion the same procedure should be observed, and, where it is shown that there has been an adverse user for a period of twenty years, the presumption will be that the owner of the land was

capable of suing or acquiescing in the préscription. *Chaney* v. *Moore,* 1 Cold., 48; *Cook* v. *Cook,* 10 Heisk., 464; *Alvis* v. *Oglesby,* 87 Tenn., 172, 10 S. W., 313; *Coal Co.* v. *Daniel,* 100 Tenn., 65, 42 S. W., 1062; *Gross* v. *Disney,* 95 Tenn., 592, 32 S. W., 632; *Jones* v. *Coal Co.,* 133 Tenn., 159, 180 S. W., 179.

Therefore, in the absence of proof upon the subject, it will be presumed that the owners of the land were in a situation to be bound, and where this prescriptive right is pleaded and the opposite party desires to show that the owners of the land were not *sui juris* or capable of granting the right, it will be incumbent upon them to plead and prove the fact.

While we do not agree with the ruling on the point last discussed, it results that the decree of the court of civil appeals will be affirmed and the causes remanded for a new trial, in accordance with principles not inconsistent with this opinion. The costs of the appeal are adjudged against the defendants.