ELOISE SCRUGGS v. SILAS BAUGH, JR., et al.

Middle Section.    Sept. 28, 1926.

No petition for Certiorari was filed.

1. **Appeal and error.** A guardian ad litem for minors can not prosecute an appeal in forma pauperis.

Sections 4929 and 4930 of Shannons Code do not authorize the prosecution of appeals by guardians ad litem for minors in forma pauperis.

2. **Appeal and error. Only citizens of Tennessee can prosecute an appeal on the pauper's oath.**

It is encumbent on the parties to show affirmatively that they are citizens or residents of the State of Tennessee to authorize the prosecution of suits and appeals on the pauper's oath.

3. **Death. Death is presumed after seven years unaccounted absence.**

Where a person has been absent from his place of residence for seven years and cannot be found after diligent search and inquiry, his death is presumed and if he was unmarried at the time he was last heard of the presumption will be that he died without issue.

4. **Appeal and error. Guardian ad litem held not to have such interest in case as to entitle him to an appeal. ,**

In an action to partition real estate where one of the heirs had been absent from his residence seven years and the presumption of law was that he died without issue, held, that a guardian ad litem appointed to represent the unknown heirs could not prosecute an appeal because of the presumption there was no unknown heir, for him to represent.

5. **Adverse possession. Title to support an ejectment suit may be acquired by adverse possession.**

Legal title may be acquired in one of three ways. First, by connected chain of conveyance deraigned from either the State of Tennessee or North Carolina; second, by operation of the first section of the statute of limitation, that is seven years adverse possession under a registered assurance of title where the land had been granted by the State of Tennessee; and third, by twenty years adverse possession, which in legal contemplation is an assurance of title.

6. **Ejectment. Ejectment may be maintained against the defendant on the ground of his naked, adverse claim.**

The complainant may maintain an ejectment suit under the statutes Shannon's Code, 4970 and 4972, although in the actual possession of the property as it is not necessary that the defendant be in actual possession but he may be made a defendant on the ground of his naked adverse claim.

7. **Adverse possession. Evidence. Evidence held to show title acquired by adverse possession.**

Where a party entered into possession of land under a parol gift and lived on the same until his death and kept the place in repair and paid taxes thereon, and upon his death, his daughter continued to live on the place, said occupancy covering a period of over twenty years, held sufficient to give good title by adverse possession.

8. **Adverse possession. Tenancy in common. Evidence held to show sufficient adverse possession to cause the statute to run against co-tenants.**

Where a son entered upon a place given him by his father by parol grant and lived thereon, paying the taxes and caring for the property; until the death of his father, which was before the time to establish title by limitations and after the death of his father, he continued to live there until his death and then his daughter continued in possession until after the statute of limitations had run, held that although upon the death of the father, the son became a tenant in common with the other children, yet his holding possession and exclusive use of the place was such as to notify the other children of his claim to the property, and his title was perfected by adverse possession.

9. **Adverse possession. Evidence. In absence of evidence to the contrary, it will be presumed that persons against whom prescription is claimed were not under disability.**

It will be presumed in the absence of evidence that persons against whom the prescription is claimed were capable of suing or acquiescing in the prescription, and the fact that they were not sui juris or capable of granting a right must be pleaded and proved.

T. A. Vol. III—17.

**10. Limitation of Actions.    Disabilities.**

When the statute of limitations once begins to run, it continues even against those under disability, but cumulative or successive disabilities arising during the twenty years period of prescription arrest the operation of the limitation.

Appeal from Chancery Court of Williamson County; Hon. J. C. Hobbs, Chancellor.

Affirmed.

E. W. Eggleston, of Franklin, guardian ad litem for appellants, Baugh, Jr., et al.

W. J. Smith, of Franklin, for appellee, Scruggs.

CROWNOVER, J.    The bill in this cause was filed to sell fifty acres of land in Williamson county for partition, and to have the title of a certain house and lot in the town of Franklin decreed to complainant.    The bill alleged that Silas Baugh, Sr., originally owned both parcels of land, but in the year, 1897, he verbally gave the house and lot in Franklin to his son, Will H. Baugh, who immediately went into possession of same and erected a house and made other improvements, and remained in the open, notorious, continuous, adverse possession and occupancy of the same until his death in 1922, at which time he died leaving only one child, the complainant, and that she had since remained in the adverse possession and occupancy of said property:

That Silas Baugh, Sr., died about fifteen years ago, leaving a widow and many children, and grandchildren, who were made defendants to this suit, and among them was a son, Tom Baugh, who left home and went to the State of Oklahoma many years ago, and has not been heard from within the past ten or fifteen years; that his residence is unknown, and it is not known whether he is dead or alive, and that his heirs and their places of residence are unknown and cannot be ascertained after diligent inquiry.    The bill made Tom Baugh and his unknown heirs parties defendants by publication, and E. W. Eggleston was appointed guardian ad litem to represent his unknown heirs.    He filed a formal answer submitting their rights to the protection of the court.

Pro confessos were taken against all other defendants.

Proof was taken and the chancellor decreed that the heirs at law of Silas Baugh, Sr., were the owners as tenants in common of the fifty acre tract subject to the homestead rights of the widow, but that complainant, Eloise Scruggs, was the absolute owner of the house and lot situated in the town of Franklin.

From which decree the guardian ad litem prayed an appeal on a pauper's oath, which was granted by the chancellor.

After an examination of the record we are satisfied that the chancellor was not authorized to grant an appeal on the pauper's oath.

By the Acts of 1871, Chapter 111, Shannon's Code, section 4929, guardians or guardians ad litem may in behalf of their wards who

are of unsound mind, prosecute a suit by taking the oath, and this has been construed by our Supreme Court to apply to appeals on the oath by guardians ad litem for such persons of unsound mind. See, Alexander v. Morris, 109 Tenn., 724.

But this statute does not authorize guardians or guardians ad litem of minors to prosecute suits or appeals in forma pauperis in behalf of such wards. See, Shannon's Code, section 4929, Notes 4 and 5, and authorities there cited; Musgrove v. Lusk, 5 Bax., 684.

Shannon's Code, section 4930, Acts of 1889, Chapter 105, provides, —all persons acting as the next friend of infants may prosecute suits for such infants in forma pauperis, which of course, would authorize such persons to prosecute an appeal in forma pauperis. While the statute, in express terms, provides for only the prosecution of suits upon the pauper's oath, yet the provision in legal contemplation embraces all proceedings for the correction of errors, such as appeals, or writs of error, these being modes by which suits are prosecuted. See Alexander v. Morris, supra.

But, we are of the opinion that the aforesaid section 4930 of the Code does not authorize the prosecution of appeals by guardians or guardians ad litem for minors. While in a certain sense all guardians or guardians ad litem are next friends for minors and are considered such in many ways (see Gibson's Suits in Chancery (2 Ed.), section 103 to 105) yet in strict legal contemplation they are entirely different personages. There is no statute authorizing guardians or guardians ad litem to prosecute suits or appeals in forma pauperis for infants. The law authorizing suits in forma pauperis confer a personal privilege, which the person upon whom such privilege is conferred alone can avail himself of. See McCoy v. Broderick, 3 Sneed, 203; Smith v. Railroad, 5 Pick., 665.

Hence, we hold that a guardian ad litem for minors cannot prosecute an appeal in forma pauperis.

There is also another reason why this guardian ad litem cannot appeal in forma pauperis, and that is that the statutes authorize the prosecution of suits and of appeals on the pauper's oath "shall not enure to the benefit of any person who is not a citizen or resident of the State of Tennessee." See, Shannon's Code, sec. 4928, and Act of 1901, Chapter 126.

It is incumbent on the parties to show affirmatively that they are citizens or residents of the State of Tennessee. See Shepard v. Thomas, 147 Tenn., 338; Gibson's Suits in Chancery, (2 Ed.), sec. 182.

In this case the record shows that Tom Baugh was living in the State of Oklahoma when last heard of and it is further shown that the names and the residences of his heirs, if any, are unknown; hence, it is not shown that they are citizens or residents of Tennessee.

In this case the appeal was granted and the appellants were allowed ten days in which to file the pauper's oath. The appeal was granted unconditionally. But it is our duty to make an order on the

appellants to execute an appeal bond, hence, it is ordered that unless the guardian ad litem file in this court a good solvent appeal bond in the sum of $250, satisfactory to the clerk, within fifteen days, the appeal will be dismissed and the cost incident thereto taxed to appellants.

## OPINION ON THE MERITS.

CROWNOVER, J.   The appellant, guardian ad litem, having executed an appeal bond as required by an order at the last term of this court, this cause is now before us on its merits.

As stated in the original opinion, the bill in this cause was filed to sell fifty acres of land in Williamson county for partition, and to have the title of a certain house and lots in the town of Franklin decreed to complainant.   The bill is in the nature of an ejectment bill to quiet complainant's title and possession to the house and lot in Franklin and to enjoin the defendants from interfering with complainant's possession.

The guardian ad litem assigns only one error, and that is, that the court erred in holding that Eloise Scrubbs was vested with a good title to the house and lot situated in the town of Franklin, and insists that the proof is insufficient to show that complainant and her father, Will H. Baugh, had acquired a legal title by twenty years adverse possession under a parol gift.

After a careful examination of the record we are of the opinion that the assignment of error should be overruled and that the decree of the chancellor should be affirmed, for two reasons:

(1) Because the guardian ad litem for the unknown heirs of Tom Baugh has no interest in the law suit and cannot impeach the decree on appeal, and

(2) Because the complainant has had twenty years adverse possession.

The record shows that Tom Baugh had not been heard from within fifteen years, that he could not be found after diligent search and inquiry, and that he was unmarried when last heard from.   We think that the proof is sufficient under the circumstances to presume that he died at the end of seven years, without issue.   See Marquet v. Aetna Life Ins. Co., 128 Tenn., 213; Pritchard on Wills and Administrations, sec. 527; Shown v. McMackin, 9 Lea, 601-8; 10 R. C. L. 884, sec. 31, Note 7.

The record shows that if he died without issue, then his brothers and sisters are his heirs at law, and he has no unknown heirs; therefore, the guardian ad litem "for the unknown heirs" has no interest in this suit and cannot impeach the decree, on appeal, as the heirs are sui juris.   See Hunt v. Childress, 5 Lea, 247.

Now, on the second proposition, in order to maintain an ejectment suit the complainants must show a valid subsisting legal title and a

right to the immediate possession of the property. This legal title may be acquired in one of three ways. First, by connected chain of conveyances deraigned from either the State of Tennessee or North Carolina; second, by operation of the first section of the statute of limitation, that is seven years adverse possession under a registered assurance of title where the land had been granted by the State of Tennessee; and third, by twenty years adverse possession, which in legal contemplation is an assurance of title. See Cannon v. Phillips, 2 Sneed, 211; Keel v. Sutton, 142 Tenn., 341; Code section 4970.

The requisite of a bill to quiet possession is that the complainant must have either the legal title or possession. See Nason v. South Memphis Land Co., 138 Tenn., 21; Union Tanning Co. v. Lowe, 148 Tenn., 407.

The complainant may maintain an ejectment suit under the statutes Shannon's Code, section 4970 and 4972, although she is in the actual possession of the property as it is not necessary that the defendant be in actual possession but he may be made a defendant on the ground of his naked adverse claim. See Shannon's Code, section 4972, Note 3; H. N. Thompson et al. v. Claire B. Newman, Madison County Equity, Opinion rendered by Judge Faw at Jackson, February 28, 1924.

We think the proof conclusively shows that Silas Baugh, Sr., verbally gave this house and lot in Franklin, in the year 1897, to his son, Will H. Baugh, who immediately went into possession of same, filled up some low places, repaired an old store-house so that he could live in it as a dwelling house, moved into it and lived on this property continuously up until his death in 1922; that the original house was destroyed by fire and that he immediately rebuilt and continued to occupy the property until his death, and that after his death, the complainant, his only child, remained in the adverse possession and occupancy until the bill in this cause was filed. The proof is that they were in the open, notorious, continuous adverse possession and occupancy of the property during the whole time; that in the year 1906 there was some litigation about this property, that Will H. Baugh paid the expenses of the litigation, that the property was assessed to him for taxation and that he paid the taxes, and that the house was insured against fire in his name. As further evidence of his title and adverse possession, his father, Silas Baugh, Sr., stated to different witnesses that he had given the property to his son, Will H. Baugh, and in the year, 1906, just after certain litigation had terminated, Silas Baugh attempted to execute a written instrument showing that he had given this property to his son, Will H. Baugh, but the instrument was informally executed and was never recorded. But his son, Will H. Baugh, remained in the adverse possession and occupancy of the property.

The case is not fully developed as to how much of the property was occupied, but this lot was small, and witnesses stated without objection, that at first there was an old store house on it which was converted into a dwelling and after it was destroyed by fire another dwelling was erected, and that Will H. Baugh and the complainant were in the open, notorious, continuous adverse possession and occupancy of the property. This testimony is in no way qualified and the natural inference is that they were in the adverse possession and occupancy of the whole lot. The witnesses are not asked and it is not attempted to be shown, that the house or enclosures did not cover the whole property, hence, we are bound to assume that the statements of the witnesses are true.

The proof shows that Silas Baugh, Sr., died about fifteen years ago, and it is insisted that the complainants and defendants were tenants in common of this property thereafter, and that the proof of adverse possession is not clear and positive and that every presumption is in favor of the possession of one tenant in common in subordination to the title of the other tenants in common, and as the complainant's title had not been perfected by adverse possession at the death of Silas Baugh, Sr., the possession of Will H. Baugh thereafter was the possession of all of the tenants in common, as he had not repudiated the rights of his co-tenants.

We are aware of the rule with respect to the possession of tenants in common laid down in the case of Drewery v. Nelms, 132 Tenn., 254, and other cases there cited, but we think that the nature of Will H. Baugh's possession was sufficient notice to the other tenants in common that they were excluded from possession. Will H. Baugh was in possession under a parol gift and had remained in the adverse possession for ten years when Silas Baugh Sr. attempted to execute a written instrument showing that he had given that property to Will H. Baugh, and he remained in possession until the death of Silas Baugh, Sr., and continued in the adverse possession until 1922, when he died. It is a different situation from that stated in the case of Drewery v. Nelms, where one tenant in common entered upon the land after the death of ancestor. ''Ouster and exclusion of co-tenants may be effected by taking possession and affording actual notice of a claim of sole ownership or other positive and unequivocal act that must by its nature put the other co-tenants upon notice that they are excluded from possession. A presumption of title in such cases may also arise upon the same ground that a grant from the State is presumed by exclusive and uninterrupted possession of the land by one tenant in common for twenty or more years, claiming the same as his own, without any recognition of his cotenants or claim upon their part.'' See Drewery v. Nelms, 132 Tenn., 262.

Had this been a case where seven years adverse possession under the statute was raised, then cumulative or successive disabilities would

not arrest the running of the statute. In other words, when the statute of limitations once begins to run, it continues even against those under disability. A disability must exist when the right of action accrues, and successive disabilities, whether of the same or different persons are not available. See Shannon's Code, section 4450, Notes 1 to 5; Patton v. Dixon, 21 Pick., 97.

But this proposition can have no application to this case, as cumulative or successive disabilities arising during the running of the twenty years adverse possession do arrest the operation of the limitation, the reason being that one acquires title in this manner by prescription, and not under the statute. See McKinney v. Duncan, 121 Tenn. 265; Ferguson v. Prince, 136 Tenn., 543; Davis v. Railroad, 147 Tenn., 16, and cases cited.

Hence, it is necessary for the complainant to show that her father and she were in the adverse possession for the whole twenty years, in order for her to acquire title by prescription. We think she has done this. The record shows that her father, Will H. Baugh, went into possession in 1897, and held possession until his father died about the year 1910, the record showing that he died about fifteen years ago, then Silas Baugh's heirs were entitled to their interest in the property as Will H. Baugh held under a verbal gift, but they did not repudiate the parol gift and assert their rights, and Will H. Baugh remained in the adverse possession of the property until his death in 1922. This perfected his title to the property provided none of the tenants in common were infants or married women or under other disabilities at the death of Silas Baugh. If they were under disability, then the adverse possession of Will H. Baugh did not operate against them during such disability, but it will be presumed in the absence of evidence that persons against whom the prescription is claimed were capable of suing or acquiescing in the prescription, and the fact that they were not sui juris or capable of granting a right must be pleaded and proved. See Davis v. Railroad, 147 Tenn., 1, 15 to 17. Hence, we must presume that they were all sui juris.

Now, with respect to the unknown heirs of Tom Baugh, were it presumed that he had issue under disability, the complainant's title would be valid against them, for the reason that the proof shows that Tom Baugh had not been heard from for fifteen years, that is since 1910. He is presumed to have died at the end of seven years, or in 1917. (Shown v. McMackin, 9 Lea, 601). The record shows that Will H. Baugh went into possession of the house and lot in 1897, and continued to remain in the adverse possession until 1922. It is presumed that Tom Baugh died in 1917, therefore, Will H. Baugh had perfected his title by twenty years adverse possession in 1917 before Tom Baugh died. Hence, Will Baugh's adverse possession for twenty years perfected his title to the property against all parties.

It results that the assignment of error must be overruled and the decree of the chancellor affirmed. The cause is remanded to the chancery court of Williamson county for the purpose of selling the fifty acres for partition under proper orders and references. The cost of the appeal is adjudged against appellants and the surety on their appeal bond. The cost of the cause will await final termination of the case.

Faw, P. J., and DeWitt, J., concur.