THE MOSE AND GARRISON SISKIN FOUNDA-
TION, Complainant, Appellee, v. THE CHURCH OF
THE LORD JESUS CHRIST, etc. et al., Defendants,
Appellants.—357 S. W. (2d) 833.

Eastern Section.   September 8, 1961.

Certiorari Denied by Supreme Court February 8, 1962.

618

Blaine Buchanan and Wilkerson & Abshire, Chattanooga, for appellants.

Spears, Moore, Rebman & Williams, Chattanooga, for appellee.

McAMIS, P. J. The Mose and Garrison Siskin Foundation filed the bill in this case for a declaration of its right to remove the western wall of its building in connection with the demolition of a building preparatory to using its property as a commercial parking lot. The bill named as defendants the Church of the Lord Jesus Christ which owns the adjoining building on the west and certain lienholders whose interests might be affected by the removal of the wall. The bill alleges that the Church claimed the right to continue using the wall notwithstanding it was located entirely on complainant's lot and that because of the great danger involved it could not safely remove the wall without a declaration of its right to do so.

Defendants answered the bill claiming the right to continue using the wall by right of prescription and on the ground of estoppel as a windbreak or protective wall even though it has never been used as a structural sup-

port for their building and that they have acquired a right by prescription, by more than 20 years adverse use, to attach a thin metal flashing into the mortar of a parapet wall for the purpose of deflecting rain onto the roof of their building. It was stipulated at the trial that the wall is entirely on complainant's lot.

The Chancellor, in an exhaustive and well reasoned opinion, found that defendants' predecessors in title, in reconstructing the east wall of their building following a fire about 1932, concealed from complainant's predecessors in title that the west wall of the building now owned by complainant was to be used as a windbreak or otherwise or that flashing had been attached to their parapet wall and further found that the east wall of defendants' building was not in any way attached to or structurally dependent upon complainant's wall for support. It was, accordingly, decreed that defendants had not acquired the right to use complainant's wall by prescription or otherwise. Defendants were allowed 30 days within which to shore up their building after which complainant was to be allowed to remove its wall free of any claims for any and all damages growing out of the removal of the wall.

Defendants have appealed and renewed here the defenses overruled by the Chancellor. We consider first the assignment that the Chancellor erred in holding that defendants' predecessors in title concealed the method of construction under which the wall on complainant's property was used as a protective wall for more than 20 years and that complainant was not estopped to remove the wall by such long continued use.

The Chancellor found after a careful analysis of the proof that defendant's predecessors in title, following the fire of about 1932, erected steel H columns six inches west of the wall here in question as a support for the roof of their building and that the spaces between these columns were filled in by tile and plaster wall which was not in any way attached to the brick wall; that the front and back walls of defendants' building were not destroyed by the fire and served to conceal the type of construction except from within the building being reconstructed and that complainants and their predecessors never learned of this method of construction or that the flashing had been attached to the parapet wall until they began the work of demolition.

The Chancellor further found that complainant's wall had never been used as a party wall; that it was not structurally necessary for defendants' building; that while the tile and plaster wall between the steel columns can not be used for a windbreak, defendants without removing the steel columns can construct whatever wall might be needed for the protection and support of their building without encroaching on complainant's property. On the practically undisputed proof we fully concur in all of these findings in so far as they relate to the wall itself. Under the circumstances there was never any invasion of the property now owned by complainant arising out of the construction of the wall of which it or its predecessors had a legal right to complain. There is no proof of permission or of an adverse claim of right which would confer upon defendants the right to have the wall remain in place as a protection to their building or estop complainant from removing it.

The case of Davis v. Louisville & N. Ry. Co., 147 Tenn. 1, 244 S. W. 483, cited in complainant's brief, seems to us controlling. In that case the Railway constructed entirely upon its own property a culvert which in the course of time proved inadequate to carry water in sufficient quantity to prevent the flooding of plaintiff's property. When damage to crops finally resulted the Railway defended on the ground that the culvert had been constructed more than 20 years conferring upon it a prescriptive right. In rejecting this contention, the Supreme Court, in speaking of the rights of the landowner, said:

"While his right may be expressed as being one entitling him to allow the water to flow over his land in the natural way, the real right is that his land be not injured by interference with this flow of water. In this case the railroad company had the right to build its embankment without any culvert or with an inadequate culvert and to use its land in such way as it saw proper, so that it did not thereby cause injury to the adjacent owner. The adjacent owner could not complain, and he had no cause of action until some actual injury resulted to him from the use made by the railroad company of its own property."

The question relating to the tin flashing which constituted an actual invasion of complainant's property, slight and inconsequential though it may be, requires separate treatment.

The proof shows without dispute that a flashing tin is necessary where two buildings adjoin only in the event a parapet wall of one extends above the roof of the other, as here. When the wall is demolished as pro-

posed by complainant the parapet wall will, of course, also be removed. There will then be no need for the flashing to deflect water upon the roof of defendants' building. Assuming without deciding that defendants have a prescriptive right to continue the attachment of the flashing to the parapet wall as long as the parapet wall stands, that right will terminate when there is no longer a need for this prescriptive easement.

The question of the termination of an easement upon termination of the need for it was considered and the authorities discussed in McGiffin v. City of Gatlinburg, 195 Tenn. 396, 260 S. W. (2d) 152. We quote from the opinion in that case:

"In Atlantic & N. C. R. Co. v. Way, 172 N. C. 774, 90 S. E. 937, 939, it was said:

" 'Where the change in the land or tenement is of such decisive and conclusive a nature that the easement can not longer be enjoyed, it is extinguished, as, where a piece of land subject to an easement is washed away by the encroachment of a river, the easement ceases.'

"Washburn in his Treatise on Easement, Third Edition, page 654, says:

" 'If an easement for a particular purpose is granted, when that purpose no longer exists, there is an end of the easement.'

"In 154 A. L. R., Annotation 33-34, it is said:

" 'Like estates in land, an easement may be created which will terminate ipso facto upon the happening of a particular event or contingency. Such an easement, for purposes of this annotation, is denominated a "determinable easement." '

"In 17 Am. Jur., page 1023, it is said:

" 'There is a well established rule that an easement may be terminated by the completion of the purpose for which it was granted, inasmuch as the reason for, and necessity of, the servitude are at an end. Thus, if an easement is granted for a particular purpose only, the right continues while the dominant tenement is used for that purpose, but ceases when the specified use ceases. Moreover, a way of necessity is a temporary right in the sense that it continues only so long as the necessity exists.' "

We think these principles are directly applicable to the case here under consideration and are controlling on the question of prescriptive rights growing out of the use of the metal flashing.

Other assignments are governed by what has been said. They are all overruled and the decree in all respects affirmed.

Hale and Cooper, JJ, concur.