WALKER *v.* Fox and others.

(*Knoxville.* October 14th, 1886.)

1. WASTE. *Bill to restrain. When maintainable.*

A bill in equity to restrain waste lies, ordinarily, only when the complainant's title is undisputed, and the party committing the waste is in rightful possession; but may be maintained, in other cases on special grounds, such as to quiet possession, to prevent multiplicity of suits, to prevent irreparable mischief, and when the defendant is insolvent.

Cases cited and approved: Zinc Co. *v.* Franklinite Co., 2 Beasley, 350; Bogey *v.* Shute, 4 Jones Eq., 174; Nevett *v.* Gillespie, 1 How. (Miss.), 108; Stephens *v.* Peckham, 1 John. Ch., 318; Shubrick *v.* Guerard, 2 Desaus., 616; Duvall *v.* Waters, 1 Bland, 569; 1 Leading Cases in Equity, 4 Ed., 1023.

2. SAME. *Same. Title requisite to maintain such bill.*

The complainant in such case, like the plaintiff in an action of trespass *quare clausum fregit*, must aver and prove either actual possession, or a valid and subsisting title in himself, to the premises in dispute. Constructive possession is not sufficient to maintain the action without proof of title.

Cases cited and approved: Gainus *v.* Powman, 10 Heis., 605; West *v.* Lanier, 9 Hum., 772; Polk *v.* Henderson, 9 Yer., 312; Snoddy *v.* Kreuch, 3 Head, 301; Kerr Inj., 207, 237.

3. SAME. *Same. Conflicting titles. Mixed possession.*

When disputed land is covered by the deeds of both parties, and each has possession within the interference, but neither has title, their possessions neutralize each other, as to the land within the lap not in the actual possession of either; and for injury to that part of the land neither can maintain an action against the other.

4. EJECTMENT. *Plaintiff's title.*

In ejectment the plaintiff must recover upon the strength of his own title, not upon the weakness of his adversary's,

5. SAME. *Answer. Outstanding title.*

The complainant in a bill of ejectment and to restrain waste claimed title by grant from the State directly to himself. The answer denied the validity of this title on the ground that the land had been previously granted; and averred that defendant acquired title under the elder grant by a regular chain of conveyances. In this chain one link was defective, and the title thus left outstanding.

Held: That such outstanding title was a valid defense, and available under the pleadings.

Cases cited and approved: Peck *v.* Carmichael, 9 Yer., 328; Dickinson *v.* Collins, 1 Swan, 519; Humble *v.* Spears, 8 Bax., 156.

6. SAME. *Sheriff's deed void, not being supported by record.*

A Sheriff's deed defective in its recitals, and not supported by the record on which it is based, is bad as a link in a chain of title; but is available as an assurance of title.

---

FROM RHEA.

---

Appeal from the Chancery Court of Rhea County. March Term, 1886. W. M. BRADFORD, Ch.

T. M. BURKETT and C. D. CLARK for Complainant.

ALLEN, and CLIFT & BATE, for Respondents.

LURTON, J. The bill alleges that complainant is the "legal and lawful" owner of a tract of one thousand acres of mountain land in Rhea County; that he holds same by virtue of an entry made January 2d, 1871, and grant to himself from the State, dated July 21st, 1873. He charges that he

has been in the actual and continual possession, under his entry and grant, of the whole of said tract of land from the date of his entry to the filing of his bill May 17th, 1881. He charges that the defendants have unlawfully entered upon said land, and with a large force are engaged in cutting the timber and peeling the tan-bark; that they have already cut and peeled large quantities of tanbark, and are about to haul same away. He charges, upon information and belief, that this entry has been made by virtue of "some pretended claim of right, under some pretended title to said premises, thereby creating a cloud upon orator's title to said premises, to his great damage in rendering his land unsalable and embarrassing him in its use by lease or otherwise." The defendants are called to answer under oath and exhibit "whatever papers, writings, or other muniments of title they pretend to claim under."

The defendants are charged with being insolvent and financially irresponsible for the damages which must accrue if permitted to continue their waste. The bill concludes with a prayer for an injunction to restrain further trespass and to restrain the removal of the tan-bark cut and piled upon the premises, for a reference to ascertain damages, for a receiver to take charge and make sale of the bark and hold the proceeds subject to this litigation; that upon final hearing he be given judgment for his damages; that the proceeds of the tan-bark be applied to the payment of his claim,

and that the injunction against further trespass or waste be made perpetual, and winds up with the usual prayer for general relief.   An injunction was issued, as prayed for.

The defendants answer, and deny that complainant is the "lawful or legal" owner of said land, or that he has any title to said land whatever. They deny that complainant ever had any actual possession, and especially deny that he ever had any possession whatever of the land claimed by them.   They by metes and bounds describe the lands which they claim within the lines claimed by complainant, and say that the lands upon which they have entered are part of a tract of 5,000 acres entered April 1, 1830, by Anderson Skillen and Joseph G. Smith, and that same was granted by the State to said Skillen & Smith September 30th, 1833, and that they hold same by a regular chain of conveyance from said Skillen & Smith. They claim to have been in the actual adverse possession of the lands so claimed by them for many years.   They deny that they have entered upon or cut tan-bark from any lands in possession of complainant or owned by him; that they are upon their own lands and within the boundaries of the lands claimed by themselves, and that they entered same rightfully, as their own property, and have a legal right to be upon same and to cut timber and bark, and again deny that complainant has any title to said lands so claimed by him or any possession thereof.   They insist that the grant

to complainant is fraudulent and void in so far as it covers their lands, because "the State had parted with the title to said property prior to complainant's entry and grant," and that complainant knew said lands had been previously granted to other parties at the time he made his entry and obtained his grant. They deny insolvency or irresponsibility for damages.

The proof upon the question of possession shows that complainant, about the time of his entry, did inclose some two or three acres of land within the lines of his grant. He supposed this inclosure to be within the lines claimed by the defendants under the Skillen & Smith grant. This, however, turned out, as we are satisfied, to be a mistake. The line of the Skillen & Smith grant being subsequently run, and, as we are satisfied from the weight of proof, correctly excluded this little patch. Upon ascertaining this fact, complainant, about one year before filing this bill, extended his fence so as to include about one-half acre of the lands in dispute. This is the only actual possession, if it can be deemed one at all, of the open and notorious character required by law, which complainant had of the disputed lands, at any time before this suit was begun. On the other hand, we find that some five years before the bill was filed the defendants had a tenant named Richey within the lines of the disputed titles, and that Richey was holding under a lease from defendants. Richey, and those to whom he

Walker *v.* Fox and others.

assigned, have for several years been holding under defendants. This holding is not, however, shown to have been sufficiently long or continuous to vest title in defendants under the statute. Thus the title of neither complainant or defendants has been in anywise affected by the running of the statute of seven years. Upon an inquiry into the legal titles of the respective litigants, we find that complainant holds under a grant to himself from the State of Tennessee dated July 21st, 1873. At the time this grant issued, that part of the land in dispute had been entered in 1830 by Skillen & Smith, and granted to them by grant dated September 30th, 1833. The record further shows that in September, 1834, Skillen, by deed duly executed, conveyed his interest in said grant to his co-tenant, J. G. Smith. In July, 1835, Joseph G. Smith conveyed this land to one Joseph Evans. In 1849 a Sheriff's deed was executed to Charles Fox, the ancestor of defendants, purporting to convey the same lands, the deed reciting a judgment against Skillen, Smith, Joseph Evans, and others, levy on this land, sale, etc. This deed is not supported by any record, and is defective in its recitals, and, as a link in the chain of title under which defendants claim, is bad. This recital leaves the legal title in Joseph Evans, or his heirs-at-law. The Sheriff's deed being unsupported, it does not operate as a valid conveyance to the ancestor of defendants. Manifestly, however, defendants are not naked trespassers. While they have not such a

title as will enable them to maintain ejectment, yet we find them in possession, claiming under an assurance of title purporting to convey an estate in fee. If the bill of complainant be treated as an ejectment bill, as his Honor, the Chancellor, did, then can the complainant recover the lands which are in the occupation of defendants? We think not. If he recover, he must do so upon the strength of his own title, and not upon the weakness of his adversary. The proof shows an outstanding title in Joseph Evans, based upon a grant older than that under which complainant holds. And while defendants have failed to show that they have acquired this title through the Sheriff's deed purporting to convey it to their ancestor, yet we think, under the facts of this case, that this outstanding superior title in Joseph Evans is not an abandoned title, but a valid subsisting title, which may be relied upon by defendants to defend against ejectment by complainant. *Peck* v. *Carmichael*, 9 Yerg., 328; *Dickinson* v. *Collins*, 1 Swan, 519; *Humble* v. *Spears*, 8 Bax., 156.

But complainant insists that, inasmuch as defendants in their answer claim under the Skillen & Smith grant, that they must connect themselves with that title, and under the pleadings cannot rely upon the defense of an outstanding title superior to that of complainant. It might suffice to this to say that defendants go further and deny the validity of complainant's title, and expressly upon the ground that the lands had been granted

at time of issuance of grant to complainant. This we think opens up an attack upon the title of complainant, and is sufficient to let in the defense of a superior outstanding title.

Complainant again insists that, inasmuch as he does not specifically pray to recover possession, but, on the other hand, claims to be in possession himself, that his bill cannot be taken as a bill of ejectment, but as a bill to stay waste, and that the defense of superior outstanding title cannot be interposed to defeat such relief, if his title is better than that of defendants.

This brings us to an inquiry as to the circumstances under which equity will interfere by injunctive powers to stay waste. "The essential character of a bill to stay waste," says Mr. Adams in his work upon equity, "is that the party committing it is in rightful possession."

This makes the distinction between waste and a trespass by a stranger to the title. The two remedies, waste an equitable, and trespass a legal, pass into each other by insensible degrees, and it is sometimes difficult, from the decided cases, to determine just wherein the two remedies differ. Perhaps the best test is found in the inquiry: Can the injured party have an adequate and convenient remedy at law? If he can, his remedy is trespass and his forum law. If he cannot, equity will, by its injunctive powers, draw to itself jurisdiction, and give a complete remedy to him both by restraining present and future waste, and by dam-

ages for that already done. Ordinarily, in order to obtain injunction, there must be no dispute about the title. *Zinc Co.* v. *Franklinite Co.*, 2 Beasley, 350; *Bogey* v. *Shute*, 4 Jones' Eq., 174; *Nevett* v. *Gillespie*, 1 How. (Miss.) 108.

But pending an action to try the titles to land an injunction will sometimes be granted to restrain the defendant from waste. There must, however, be some particular reason for the application to equity, where the injury is not being done by one rightfully in possession, such as to bring the suit under the head of quieting possession, or to prevent a multiplicity of suits, or where the mischief is irreparable, or where the defendant will not be able to respond in damages in case of a recovery. 1 Leading Cases in Equity, 4th Ed., 1023; *Stevens* v. *Peckham*, 1 John. Ch., 318; *Shubrick* v. *Guerard*, 2 Desaus, 616; *Duval* v. *Waters*, 1 Bland, 569.

The action is in principle similar to the remedy by trespass at law.

In an action of trespass *quare clausum fregit*, the plaintiff is not entitled to recover unless he show an actual possession, or a valid legal title in himself to the premises in dispute. A mere claim of ownership, or the taking of timber from the land unsustained by actual possession, will not be sufficient. *Snoddy* v. *Kreutch*, 3 Head, 301.

In the case before us both parties had an actual possession within the lines of the disputed land. These possessions neutralize each other. The injury complained of is not to his actual possession,

but to what he claims as his constructive posses-sion. Constructive possession is not enough without he proves a valid legal title to maintain trespass at law. *Polk* v. *Henderson,* 9 Yer., 312; *West* v. *Lanier,* 9 Hum., 772.

If complainant be conceded the better title, and a valid title, that would give him a constructive possession. But when defendants first entered, as they did, when they put a tenant in possession under lease, that was an ouster of the complainant, and without he re-enter, he could not maintain trespass for the subsequent acts of trespass com-mitted by defendants, such as cutting timber, etc. *West* v. *Lanier,* 9 Hum., 772.

These cases, determining under what circum-stances trespass can be maintained, furnish the rule as to the requirement in equity concerning the title of the complainant. He must either have the actual possession of the premises, or he must show in himself an actual, valid, subsisting title. He must allege and prove such a title, or he cannot maintain his bill. *Gainus* v. *Bowman,* 10 Heis., 605; Kerr on Inj., 207, 237.

This case presents one of conflicting claims, each party having a partial possession, neither having such legal title as will enable the other to main-tain ejectment at law. The defendants hold under the older and better title, but have been unable to connect themselves with it, by reason of failure to show judgment and levy, to support the Sheriff's deed under which they hold. This Sheriff's deed

is, however, an assurance of title purporting to convey an estate in fee.   We think that to resist an action of trespass, the defendants not being naked trespassers, they would be permitted to rely upon the outstanding title in Joseph Evans.   In their answer in this case they deny that complainant has any title, because they say the lands had been previously granted.   The paper title of complainant is better than that of defendants, but he has not, nevertheless, a valid, subsisting, legal title superior to all others, and cannot, therefore, maintain this as a bill to restrain waste.   We think, however, that his bill has a broader scope, and may fairly be taken as an ejectment bill, as well as a bill to restrain waste.   In any event, he has not shown such title as will entitle him to recover either the possession or restrain waste.

The Chancellor was in error in regarding the case as one merely authorizing a comparison of titles, and his decree in favor of complainant is accordingly reversed, and the bill of complainant will be dismissed.