G. L. NASON *v.* SOUTH MEMPHIS LAND CO.

(*Jackson*, April Term, 1917.)

1. QUIETING TITLE. Title to support.

The requisites of a bill to quiet possession are that the complainant must have either title or actual possession; actual possession being sufficient. (*Post, pp.* 23, 24.)

Acts cited and construed: Acts 1877, ch. 97.

Cases cited and approved: Railway & Light Co. v. O'Fallen, 130 Tenn., 270; Lieberman, Loveman & O'Brien v. Clark, 114 Tenn., 117; Walker v. Fox. 85 Tenn., 154; Kane v. Vandenburgh, 1 Johns. Ch. (N. Y.), 12; Hughes v. Merton College, 1 Ves., 188; Mitchell v. Dors, 6 Ves., 147.

Cases cited and distinguished: Jerome v. Ross, 7 Johns. ch. (N.Y.), 315.

2. QUIETING TITLE. Right of action, Possession,

One whose fences are being torn down, if in actual possession, may bring a bill to quiet his possession. (*Post, pp.* 23, 24.)

3. QUIETING TITLE. Possession. Jurisdiction of chancery,

Since Act 1877 (Laws 1877, chapter 97), giving to the chancery court concurrent jurisdiction with the circuit court in all cases except those involving unliquidated damages for injury to persons, property, and character, the chancellor has jurisdiction to quiet possession of land. (*Post, pp.* 23, 24.)

4. QUIETING TITLE. Continuous actual possession, Evidence,

Complainant, in a bill to quiet possession to land, who claimed under a lease and who raised several crops upon the land during the summer, and who fenced it on three sides, there being a drain or small branch on the other boundary insufficient as a fence, and who dug a well, and who, after obtaining a prior injunction, erected a house, had no such continuous actual possession as would enable him to maintain a bill to quiet his possession. (*Post, pp.* 24-27.)

FROM SHELBY

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —Hon. Robt. M. Beattie, special, Chancellor.

Dabney M. Scales, for plaintiff.

McKellar & Kyser, for defendant.

Mr. Chief Justice Neil delivered the opinion of the Court.

The bill in this case was filed for the purpose of quieting the possession to a small parcel of land of about four acres, which the complainant claims he was in actual possession of, and that defendant had been interrupting that possession by tearing down his fences. The defendant answered, asserting title in itself and denying the allegations as to the complainant's possession, but admitting that he had, from time to time, endeavored to put a fence on certain parts of the land, and that this fence had been removed by its orders. The chancellor decreed in favor of defendant and dismissed the bill. On appeal to the court of civil appeals that decree was affirmed, and the case was then brought here by the writ of *certiorari.*

The requisites of a bill to quiet possession are that the party complainant must have either title or actual possession. Actual possession is sufficient. *Railway & Light Co.* v. *O'Fallen*, 130 Tenn., 270, 273, 170 S. W. 55; *Lieberman, Loveman & O'Brien* v. *Clark*, 114 Tenn., 117, 85 S. W., 258, 69 L. R. A., 732; *Walker* v. *Fox*, 85 Tenn., 154, 162, 2 S. W., 98. This relief was granted sparingly in the early days of English equity jurisprudence, as shown in *Stevens* v. *Beekman*, 1 Johns. Ch. (N. Y.), 318, and even as late as the case just mentioned. The matter is more fully discussed in *Jerome* v. *Ross*, 7 Johns. Ch. (N. Y.), 315, 11 Am. Dec., 484. In that case it is said:

"Since the disuse of the common-law actions of waste and estrepement, the more easy and complete mode of proceeding by bill in equity, to stay waste, either threatened, or which the party is in the act of committing, and for an account of such as may have already been done, has been particularly favored by the courts, both in England and in this country" and a quotation is made from *Kane* v. *Vandenburgh*, 1 Johns. Ch. (N. Y.), 12, "that it is a wholesome jurisdiction, to be liberally exercised in the prevention of irreparable injury, and depends on much latitude of discretion in the court." It is said, however, in *Jerome* v. *Ross*, that the courts in England were for a long time extremely strict in the administration of this remedy, and the first instance of relaxation was in a case where an injunction was granted upon a

forcible entry against the commissioners of a turnpike, for digging gravel on land of the plaintiff. "But this seems," says the opinion, "to have been grounded on the equity of quieting possession merely" (citing *Hughes* v. *Merton College,* 1 Ves., 188). "The rigor of the ancient rule," it is said, "was at length further relaxed, upon the avowed principle of enjoining in matters of trespass, where irreparable injury is the consequence; and upon the authority of this case, Lord ELDON granted an injunction to restrain a trespasser from digging coal upon the premises of another. *Mitchell* v. *Dors,* 6 Ves., 147." The requirement continued quite strict as to the nature of the injury; that is to say, as to whether it could be adequately relieved at law. Of course, there can be no question of one's title to the remedy, where his fences are being torn down, if he is really in actual possession, and it should be stated that, in Tennessee, since the passage of the act of 1877 (Laws 1877, chapter 97) which gave to the chancery court concurrent jurisdiction with the circuit court in all cases except those involving unliquidated damages for injury to persons, property, and character, there should be no difficulty at all in exercising the jurisdiction.

Was the complainant in actual posesssion of the land? It appears that the South Memphis Land Company has owned, for many years, a tract of land comprising about three thousand, five hundred acres ad-

Nason v. South Memphis Land Co.

joining, or near, the city of Memphis. The small par-
cel of land in controversy is a part of the large tract
and lies adjoining the land of one Astor, who has
been endeavoring to secure it by adverse possession,
using the complainant as his instrument. In 1906
Mr. Astor and his wife executed a lease on this land
to the complainant for the term of four years.
Again, on the 1st day of January, 1910, another lease
was executed, running for one year. On the 1st day
of January, 1911, another lease was executed for five
years, and, finally, on the 1st day of January, 1914,
another lease was executed, running to the 1st day of
January, 1919. The evidence leaves the question in
doubt as to whether complainant made a crop on this
land during the years 1906 and 1907, but it is fairly
inferable that he did make a crop each year from
1908 to 1913, inclusive. He started a crop in 1914,
but his fence was torn down by the defendant, and
his servant was warned away from his plow, and
then the present bill was filed on April 30, 1914, un-
der which an injunction was secured enjoining fur-
ther interference. The defendant had most of the
large tract rented out to colored people, and these
subrented to other colored people, and the making of
a crop by a colored man upon any part of the land
did not attract the attention of the defendant's offi-
cers, so observation of some colored man working on
this small parcel did not arouse in the minds of de-
fendant's officers any thought of an adverse claim.

However, when they saw a fence erected on the land, consisting of posts and one or two strands of wire, they broke it down from time to time and made inquiry as to the person who had erected such fencing. They finally discovered that the complainant, a colored man, was claiming a lease under Mr. Astor and Mrs. Astor.

Shortly after that the present bill was filed. The weight of the evidence is that there was fencing only on three sides of the land. This was broken down from time to time by defendants, and within a few weeks or months renewed by complainant. There was no fencing on the east end. On that end there was a drain or small branch. There was no structure erected by the complainant on the land until after he had enjoined the defendant. He then erected a house on it. However, in 1912, he dug a well upon the land.

Now, under these facts, did the complainant have such actual possession as would legally justify him in filing a bill to quiet possession? We think not. Although he raised several crops of vegetables upon the land, running from the spring until the fall, and although the leases described the land, yet he never had such actual, continuous, possession as would be extended to the boundaries of his lease. The planting and cultivation of a crop during a part of the year and leaving it unoccupied for the rest of the year would not amount to a continuous lawful pos-

session. Such intermittent possession would be insufficient. The digging of a well would not be sufficient evidence of continued possession, nor would fencing the land on three sides. The drain or small branch on one end of the land would not answer for a fence, as would a natural bluff or a river that would present a real barrier. Of course the building of a house on the land after the injunction was granted, tying the defendant's hands, could not aid the complainant.

On the ground stated, we are of the opinion there was no error in the action of the court of civil appeals in affirming the chancellor's decree dismissing the bill, and therefore the writ of *certiorari* is denied.