James M. Crain, Knoxville, for defendant-appellant.

H. Terrance Kite, Clinton, for plaintiffs-appellees.

MATHERNE, Retired Judge.

This is a boundary dispute wherein the chancellor held in favor of the plaintiffs Whitworth. The defendant Hutchison appeals insisting that the chancellor erred: (1) in admitting into evidence a plat map from the office of the county assessor; (2) in holding that the plat map from the office of the county assessor governed the location of the boundary; (3) in ruling that the defendant did not have title through adverse possession; (4) and also that the evidence preponderates against the holding of the chancellor.

The lawsuit was heard by the chancellor without a jury on oral testimony and certain stipulations of fact. Those stipulations pertinent to this court are as follows:

## STIPULATIONS

Come the parties, by counsel, and make the following stipulations of fact:

**Pat W. WHITWORTH and Wife, Betty F. Whitworth, Plaintiffs-Appellees,**

v.

**Barbara P. HUTCHISON, Defendant-Appellant.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

April 1, 1986.

**916**

1. Plaintiffs and their predecessors in title have paid all state and county taxes assessed on that tract known as Parcel 2 on Tax Map 33 in the First Civil District of Anderson County, Tennessee, for a period of more than twenty (20) years next preceding this action.

2. Defendant and her predecessors in title have paid all state and county taxes assessed on that tract known as Parcel 2.01 on Tax Map 33 in the First Civil District of Anderson County, Tennessee.

3. Plaintiffs are the owners in fee simple absolute of the following described tract of land:

Being a tract situated and lying approximately 600 feet East of Mount Oliver Church Road and being situated on Pine Ridge and adjoining the land of Hiawassee Land Company on the East and containing 20 acres, more or less, and being particularly bounded and described as follows:

BEGINNING on a spotted oak, M.C. Bailey, D.H. Warwick and E.P. Warwick corner; thence a Northwest direction down to the road and gully; thence 50 yards up the gully, then a straight line to the top of the Pine Ridge; thence with the top of Pine Ridge down to the Warwick line; thence a Southeast direction with the Warwick line to the top of the knob; then with the top of the Ridge to the beginning corner, containing 20 acres, more or less.

For reference, see Book of Deeds "T", Vol. 13, page 280, Anderson County, Tennessee, Register of Deeds Office.

4. Defendant is the owner in fee simple absolute of the following described tract of land:

Lying on the north side of the hollow road leading up from Mount Olive Church and formerly known as a portion of the Long farm and more fully described as follows:

Beginning on a metal stake at the big road; thence a Northwest course with the branch to Warwick's line; thence a Northerly direction with Warwick line to the top of Pine Ridge, Humphrey and Long's corner; thence with Long's line, a Southwest course to the big road; thence a Southwest course with said road to the beginning. Containing 10 acres, more or less.

There is excepted and reserved from the above-described tract of land the right of way as described and set out in the deed from Luke Bell, et ux, "TO" Curtis Kirk, et ux, recorded in Book of Deeds "L", Vol. 7, page 135, Register's records of Anderson County, Tennessee.

For reference, see Book of Deeds "J", Vol. 8, page 563, Anderson County, Tennessee, Register of Deeds Office.

5. The description of the aforementioned tract owned by plaintiffs has remained unchanged in all conveyances in their chain of title since that deed from F.P. Bailey et al. to A.B. Warwick et ux recorded November 16, 1896, in Deed Book "W", Vol. 3, page 379, in the Anderson County Register of Deeds Office.

Looking to the testimony produced in open court, we have serious problems in attempting to follow that evidence. The plaintiffs produced the survey as prepared by surveyor Phillips, and the defendant produced a survey as prepared by surveyor Hinds.

The defendant seriously questioned the accuracy of her survey as prepared by Hinds wherein she disagreed with the location he made of the northwest and southwest corners of the property. Hinds stated that there was some question about his survey on the south side of the property.

The surveyors, the parties and witnesses testified concerning these surveys. However, a considerable amount of this testimony is of no value to this court. As example, the testimony of Phillips at pages 41–46 of the record reflects that he was testifying from his survey, Exhibit 14, and pointing to various points on the boundary, but we have no way of ascertaining where

those points are located. Then at page 50 of the record the same witness testified:

Q. Okay. Then in a southeast direction with the Warwick line to the top of the knob?

A. Which is right where you have got your hand.

Q. Right there. And then with the top of the ridge to the beginning point, which is a black oak, or a spotted oak rather?

A. Well, now the only ridge coming off from there is right here.

Q. Uh huh.

A. If you go this way, you go across hollows, so it is a very distinct ridge.

Q. Now is this flat land out in here?

A. Yes, it is fairly flat.

Q. And a real steep slope up here?

A. Well, between the road and the creek it is straight off.

The foregoing are two examples of numerous pages of testimony that this court cannot follow. The chancellor heard the testimony and observed the points indicated by the witnesses. The chancellor would, therefore, be able to rule, where this court cannot.

The plats from the county assessor's office were introduced for the purpose of showing the plats on which the parties had paid taxes, not for the purpose of establishing boundary lines. We hold that the chancellor did not err in admitting those documents. In his written Opinion the chancellor stated that the Phillips survey "does not agree with Exhibit No. 1 (Assessor's Plat), does roughly parallel that shape." We hold this was a mere observation of the chancellor and does not constitute an adoption of the Assessor's Plat as the boundaries of the plaintiff's land. The chancellor held that the Phillips survey "more nearly follows the description contained in the deeds than that of Mr. Hinds," and decreed the plaintiffs to be the owners of the land contained within the boundaries of the Phillips survey.

We agree with the chancellor that the stipulation "has the effect of establishing that the defendant has not paid taxes on Parcel 2, Exhibit No. 1, (tract on which plaintiff had paid all taxes for more than 20 years) for more than 20 years or any portion thereof."

The defendant claims title to the land referred to in her deed by virtue of T.C.A. Sec. 28–2–101, seven years adverse possession under recorded assurance of title. And, the defendant claims the plaintiffs were barred from claiming title by virtue of T.C.A. Sec. 28–2–102, failure to effectively prosecute an action against those in possession under recorded assurance of title for a period of seven years. The defendant also relies upon the common law doctrine of prescription.

The defendant's deed was recorded on August 23, 1962, in the Register's Office of Anderson County, Tennessee. The present lawsuit by the plaintiff was filed on May 25, 1984, which was 21 years 9 months and 2 days after the defendant recorded her deed. The plaintiffs purchased their property by deed dated August 10, 1976, and recorded on January 12, 1977.

Each of the three grounds asserted as establishing ownership in the defendant requires adverse possession of the land by the defendant, and those under whom she claims. The adverse possessor has the burden of establishing by clear and positive proof such adverse possession as will bar the real title. *Jones v. Coal Creek Mining & Mfg. Co.* (1915) 133 Tenn. 183, 180 S.W. 991; *Davis v. Louisville & N.R.R.* (1921) 147 Tenn. 1, 244 S.W. 483. The above rule applies to both the length of time and the character of possession. *Southern Coal & Iron Co. v. Schwoon* (1921) 145 Tenn. 191, 239 S.W. 398. Actual possession is necessary to perfect title under T.C.A. Sec. 28–2–101. There must be exclusive, actual, adverse, continuous, open and notorious possession for the prescriptive period, under a claim of right or title to the property; and the owner must have knowledge of the adverse claim, or it must be so open and notorious as that he will be presumed to have notice of it. *Sequatchie Coal & Iron*

*Co. v. Coppinger*, (1895) 95 Tenn. 526, 32 S.W. 465.

■ The defendant Hutchison testified that she truck-patched some of the land in question, but she has not done so since 1975. She does not show that this activity was continuous for the prescribed period prior to 1975. She also testified that a family named Wilkerson lived on the property for four years, but she failed to establish a continuous possession from that predecessor in title on into her. The plaintiff, Mr. Whitworth, testified that he was on the property regularly since 1975, and he saw no signs of a garden or truck patch. The possession must be continuous for the entire period, and a break of a single day will require a new beginning of the period of continuous possession. *Free v. Free*, (Tenn.Chanc.App.1900) 59 S.W. 384. We hold that the defendant has failed to establish continuous possession for any of the prescriptive periods.

We also hold that the defendant has failed to establish actual possession. To determine actual possession consideration must be given to the nature of the property, the usage to which it is adapted, and the kind of possession of which it is susceptible. There may be actual possession in law without actual occupation or cultivation. *Green v. Cumberland Coal & Coke Co.*, (1902) 110 Tenn. 35, 72 S.W. 459. The record reveals that the defendant erected some concrete block walls on the property which she said was the beginning of a house. However, this project was abandoned several years ago, and the plaintiff testified that he tore down the walls as being dangerous. The defendant also testified that she built a shed on the property in which she stored various items. The proof does not establish what this shed was used for, nor whether it was a permanent structure. Adverse possession is not established by itermittent acts of having dirt dumped on the land to fill holes, and the occasional storing of lumber and wagons thereon. *Ferguson v. Prince*, (1916) 136 Tenn. 543, 190 S.W. 548. A hogpen in the woods, in which stock hogs are fed, does not constitute adverse possession of the tract of land on which it is situated. *Hubbard v. Godfrey*, (1898) 100 Tenn. 150, 47 S.W. 81. A lettuce and mustard bed, 10 feet square, on a spot of ground in the woods, does not constitute adverse possession of the tract of land upon which it is situated. *King v. Mabry*, (1879) 71 Tenn. 237. The maintenance of a cowpen on a small portion of land, which is used to salt animals, is not sufficient basis for claim of actual possession. *Sage v. Dayton Coal & Iron Co.*, (1922) 148 Tenn. 1, 251 S.W. 780.

We further hold that the record does not establish actual possession of the land in controversy in either party. Where neither of the contending parties is in actual possession, the constructive possession is with the one who holds the legal title. *West v. Lanier*, (1849) 28 Tenn. 762; *Padgett v. Baker*, (1823) 1 Cooper's Tenn.Chanc. 222; *Walker v. Fox*, (1886) 85 Tenn. 154, 2 S.W. 98.

We, therefore, hold that the defendant has not established adverse possession of the subject property for any of the three prescriptive periods upon which she relies.

The evidence does not preponderate against the holding of the chancellor, and his decree is affirmed. Rule 13(d), Tennessee Rules of Appellate Procedure. This lawsuit is remanded to the trial court for the enforcement of its decree. The cost in this court is adjudged against the defendant-appellant.

GODDARD and FRANKS, JJ., concur.