IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 19, 2000 Session

## TAYLOR MEHRHOFF COMPANY, ET AL. v. BARBARA A. MCDANIEL, ET AL.

A Direct Appeal from the Chancery Court for Fayette County
No. 11926     The Honorable Dewey C. Whitenton, Chancellor

No. W1999-00413-COA-R3-CV - November 21, 2000

Plaintiffs, Landowners, sued adjoining landowners, seeking a judgment determining the location of a disputed boundary line. The trial court found that Defendants had: (1) established record title to the disputed property; (2) established the boundary line in recorded deeds and trust deeds, and by the conduct, implied agreement, acquiescence and recognition of adjoining property owners; and (3) proven title by adverse possession of the disputed property. Plaintiffs-Landowners have appealed.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Lee S. Saunders, Somerville, For Appellants, Taylor Mehrhoff Company, John B. Taylor, and Stan Mehrhoff

Joel Porter, Memphis, For Appellees, Barbara A. McDaniel and Kenneth McDaniel

## OPINION

This is a boundary line dispute tried on complaint and counter-complaint. Plaintiffs, Taylor Mehrhoff Company, John B. Taylor and Stan Mehrhoff, appeal the judgment of the trial court sitting without a jury in favor of Defendants, Barbara A. McDaniel and Kenneth McDaniel. The court found that: (1) Defendants have record title to the disputed property; (2) the disputed boundary line was established by acquiescence; and (3) Defendants established common law adverse possession by their occupation of the disputed property in conjunction with that of their predecessors for a total of more than thirty (30) years.

The land involved is located in Rossville, Tennessee. The area in dispute is a strip of land approximately twenty-five (25) feet wide and one-hundred (100) feet long which is situated on the

eastern side of Defendants' property. Plaintiffs claim a lot approximately 50' by 100' in size, whereas Defendants claim the westernmost 25' of that lot is part of their property.

Because the placement of the surrounding properties is essential to determining ownership of the disputed area, we will attempt to describe the block on which the property is located. The properties referred to below are located on a block of Front Street which is bounded by Second Street to the west and Main Street to the east. All of the lots have frontage on Front Street. In order from west to east, we will refer to the lots as the: Reed Property; McDaniel Property; Taylor-Mehrhoff Property; Hurdle Grocery Store Property; and Rossville Savings Bank Property.

The disputed boundary line was first set out in a description contained in a warranty deed dated January 8, 1901, from R.B. Nebhut and wife, Mrs. G.W. Nebhut to W.S. Pearson. That description reads,

> Beginning at the northeast corner of Mrs. Susie Pearson's lot and running east 118 feet to within 20 feet of R.B. Nebhut store house, his N.W. corner. . . .

Thomas Reed now owns what was Mrs. Pearson's lot.

Prior to 1900, the Nebhuts owned the entire block of property at issue in this case. In 1900, the Nebhuts transferred a lot with 114' of frontage on Front Street to Mrs. Susie Pearson (the Reed Property). In 1901, the Nebhuts transferred 118' of frontage to W.S. Pearson (the McDaniel Property). Although the Nebhuts transferred property subsequent to the 1901 transfer, the later transfers are not necessary to the resolution of this case.

Several facts complicate this case. The first is that, with the exception of the 1990 survey Defendants had made at the time they purchased their lot, all of the descriptions of their property are made with reference to the surrounding properties or to a non-existent building. The second is that the descriptions both parties use to situate their properties are dependent upon where one places the "point of beginning" in the description of the corner lot, now owned by Thomas Reed. The description of the Reed Property from the original 1901 deed from the Nebhuts is as follows:

> Beginning at the N.W. corner of road leading to Church east 114 feet with street, thence 288 feet S. to Street, thence west 114 feet to road. Thence north to beginning 288 ft.

Plaintiffs argue that the phrase "Beginning at the N.W. corner of road leading to Church east 114 feet with street" means "beginning in the center line of Second Street." Defendants, on the other hand, appear to be claiming that the point of beginning is located at the curb on the southeast corner of Front and Second Streets and the northwest corner of the described lot. The dispute over where the beginning point should be located is further compounded by the fact that both Second Street and Front Street were apparently widened in the late 1960's.

The trial court filed an extensive and detailed trial opinion incorporated in the final decree. It sets forth findings of fact and conclusions of law. We quote in pertinent part the trial court's findings.

This lawsuit was filed on July 21, 1997, and it involves the ownership of a 25 feet by 100 feet strip of land in the Town of Rossville and includes a request for the determination of the correct boundary line between the parties. Mark Ward, the Property Assessor of Fayette County, was joined as a party because of the alleged errors in the maps in his office.

The defendant, Barbara A. McDaniel, acquired title to the house and lot on which she and her husband, Kenneth McDaniel, presently reside in the Town of Rossville, by a warranty deed from the J. B. Rives heirs, dated July 19, 1990. The property had been conveyed to J. B. Rives by T. W. Bowling on December 8, 1910, and had been occupied as a family residence by the Rives family since 1910.

The legal description contained in the McDaniel deed is as follows:

Parcel 01400, Map 166J, Group A:

Beginning at an iron pipe in the south margin of Front Street, being the northeast corner of the Thomas Reed property, runs thence with the south margin of said street East 118 feet to an iron pipe, being the northwest corner of the H. H. Farley property; thence with the west boundary line of same South 139 feet to an iron in the north boundary line of the Elizabeth Morrison property; being the southwest corner of said Farley property; thence with said north boundary line West 118 feet to an iron, being the southeast corner of said Reed property; thence with east boundary line of said Reed property, North 139 feet to the point of beginning, containing 16,402 square feet.

The plaintiff, Taylor Mehrhoff Company, received title to their property by warranty deed from the heirs of H. H. Farley, Deceased, dated January 7, 1994. The legal description to the lot in question as contained in the Taylor Mehrhoff deed is as follows:

TRACT NO. 1: A certain lot or parcel of land situated in the Town of Rossville, Civil District No. 10, Fayette County, Tennessee, and being bounded on the north by Front Street; on the east and south by Morrison and on the west by Rives.

Map 166J, Group A, parcel 15.00

H. H. Farley acquired title to a substantial portion of the city block in question between 1927 and 1930. By a deed dated January 1930, H. H. Farley conveyed to A. W. Morrison a portion of the property he had previously acquired. This deed contained the following call: **"Beginning 20 feet east of J. B. Rives northeast corner of his residence lot and running east 76 feet to a stake."** (Emphasis supplied).

In 1956, Mr. Morrison conveyed back to Mr. Farley a five foot strip which was described as: "Beginning at the northeast corner of the Farley lot and running thence east five feet. . . ." The defendants contend that Mr. Farley was only left with a 25 foot lot which was described by reference to the Rives property on the west and the Morrison property on the east.

On April 24, 1990, the Morrison heirs conveyed their lot to E. J. Hurdle and used the same call: **"Beginning 20 feet east of the Rives northeast corner. . . ."** (Emphasis supplied).

H. H. Farley executed a deed of trust in 1964 and in 1968 using the legal descriptions of two tracts, one with 20 feet of frontage and the second with 5 feet of frontage, making a total of 25 feet of frontage, as contended by the defendants.

The recorded deed of trust dated March 6, 1968, and executed by H. H. Farley and Nettie P. Farley, contained the following legal descriptions of the strip of property in question:

TRACT ELEVEN: Situated in the Town of Rossville, 10th Civil District of Fayette County, Tennessee, and more particularly described as follows: Beginning at a point which is Northeast corner of a lot the property of H. H. Farley and which is also Northwest corner of lot conveyed to A. W. Morrison by H. H. Farley by deed recorded in Book

67, Page 319, in Register's Office for Fayette County, Tennessee, from said point of beginning East five (5) feet; thence south 142 feet to a stake; thence west five (5) feet to a stake; thence North 142 feet to the beginning.

Being the same property conveyed to H. H. Farley and wife, Nettie P. Farley, by A. K. Morrison Et Al by deed of record in the Register's Office of Fayette County, Tennessee. Record Book 113, Page 619.

TRACT TWELVE: A certain lot of land in the village of Rossville, 10th Civil District, Fayette County, Tennessee, and described as follows: on the north by lands of A. V. Warr and Railroad square and a store lot of R. B. Nebhut; on the east by the Rossville and Mt. Pleasant Road and the Methodist Church lot; extending on north and west and south of said Church lot; on the south by the street, north of Mr. Bowling's lot; on the west by the lot of Mrs. G. W. Nebhut; save and except a certain lot sold to J. F. Nebhut in 1907, as appears in Book 32, Page 4, of the Register's Office of Fayette County, Tennessee, and save and except a certain lot sold to W. F. Parson in 1901, being R. B. Nebhut's store house, as appears in Book 25, Page 485, in the Register's Office of Fayette County, Tennessee. The above described lot being the R. B. Nebhut store lot in the Town of Rossville, and being a part of the same property conveyed to H. H. Honnoll, Trustee, by E. G. Riddick, Trustee, by Trustee's Deed of date October 5, 1925, of record in Book 61, Page 279, of the Register's Office, to which reference is here made.

Being the same lot of land conveyed to H. H. Farley by H. H. Honnoll, Trustee, by deed recorded in the Register's Office of Fayette County, in Book 64, page 140.

EXCLUDING from the above tract is the following described tract; Beginning 20 feet East of J. B. Rives northeast corner of his residence lot and

running East 76 feet to a stake; thence South 124 ½ feet to street; thence South with street to old Methodist Church lot, now belonging to A. W. Morrison; thence West with church lot 56 feet to northwest corner of church lot; thence South 40 feet to a stake; thence West 10 feet to a stake; thence North 179 feet to the beginning. Same being conveyed to H. H. Farley and wife, to A. W. Morrison by deed dated January 14, 1930, and recorded in the Register's Office of Fayette County, Tennessee, in Record Book 67, Page 319.

**Tracts 11 and 12 constitute one lot in the net size of 25 by 142 feet**. (Emphasis supplied).

The evidence indicated that a privet hedge had existed and had been maintained along the boundary lien recognized by the Rives family and this privet hedge was shown to have existed at that location since the early 1950's and a strip claimed by the plaintiffs is west of the privet hedge and is enclosed within the yard as recognized and maintained since the 1950's, by the J. B. Rives family and now by the defendants, Mr. and Mrs. McDaniel. In addition to mowing the grass and maintaining the hedge in the disputed area, the defendants and their predecessors in title have planted shrubs and flowers, have erected a bird house, and have continuously used the area as part of their yard. Therefore, the defendants contend that the line has been recognized by all of the adjoining property owners since the early 1950's.

The plaintiffs contend that the starting point in the description of the corner lot owned by the reeds should be at the center of Second Street rather than at the margin of the street, that the actual frontage for the Reed corner lot should be 90 feet and that the defendants' boundary line should be moved westward 25 feet.

The plaintiffs claim ownership of a lot in the Town of Rossville, measuring 50 feet by 100 feet. The plaintiffs further allege that the defendants are the owners of property immediately to the west of the plaintiffs' property, measuring 118 feet by 139 feet. The plaintiffs also contend that the defendants are unlawfully occupying a portion of the plaintiffs' land; that the size of strip in dispute is about 20 to 25 feet by 100 feet; and that defendants do not hold record title to the disputed area. The plaintiffs have further requested

that the Court determine and establish the true boundary line between the properties.

The defendants, Barbara A. McDaniel and Kent McDaniel, filed their answer and counter-complaint alleging that the warranty deed by which they took title in 1990 is evidence of their record ownership of the property in dispute. The defendants further allege that if there is any question about their record title, then they and their predecessors in title have had such possession under both color of title for more than seven (7) years and at common law for more than twenty years so as to vest the defendants with a good and indefeasible title in fee by adverse possession. The defendants further filed a counter-complaint joining Mark Ward, the Assessor of Property, of Fayette County as a party, and requesting that the records of his office be corrected so as to remove any improper dimensions with regard to the lots of the plaintiffs and the defendants.

R. B. Nebhut and wife, Gerandine [sic] Warr Nebhut, were the common source of title for the parties, and at one time they owned all of the property along Front Street in Rossville, from Main Street westward to Second Street. In 1901, Mr. and Mrs. Nebhut conveyed the lot now owned by the defendants, and in 1927, the Nebhut storehouse lot was sold to H. H. Farley by a Trustee's Deed, after the Nebhut's ownership was foreclosed.

In January 1930, H. H. Farley sold to A. W. Morrison the eastern portion of the Nebhut storehouse lot and retained the western part. Mr. Farley owned the retained part until his death in 1984. The H. H. Farley heirs conveyed the property to the plaintiffs in 1994.

The deed by which H. H. Farley took title to the Nebhut Storehouse Lot in 1927 did not describe the property by metes and bounds.

*          *          *

The trial court's opinion then concluded:

After reviewing the above legal authorities and all of the credible evidence in the cause, the Court finds that the claims of the plaintiffs must be dismissed because the defendants have established: (1) that they have the record title; (2) that they have the recognition

in recorded deeds and trust deeds, and by the conduct, implied agreement, acquiescence, and recognition of adjoining property owners, of the boundary line along the privet hedgerow; and (3) title by adverse possession by the defendants and their predecessors in title for more than thirty (30) years. The Court further finds that the beginning point of the Reed corner lot should be at the margin of the street, and not the center.

On appeal, Plaintiffs raise three issues, which they set out in their brief as follows:

(1) Whether the evidence preponderates against the trial court's findings that the disputed boundary line is located along the privet hedgerow and that Defendants/Appellees have record title to the disputed property;

(2) Whether the defenses of "recognition of boundaries by acquiescence" and "common law adverse possession without color of title" were waived due to the Defendants/Appellees' failure to assert those defenses by pleadings; and

(3) Whether the Defendants/Appellees carried the burden of proof to establish title to the disputed parcel with proof of seven (7) years adverse possession coupled with recorded assurance of title in accordance with T.C.A. § 28-2-101.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). Based upon our review of the record in this case, we cannot say that the evidence preponderates against the findings of the trial court, and therefore, affirm those findings.

The chancery court has jurisdiction to resolve disputes regarding property lines under T.C.A. § 16-11-106, which states:

(a) The chancery court has jurisdiction to hear and determine all cases in which the boundary line or lines of adjoining or contiguous tracts of land is one, or the only, question at issue in the case.

(b) In all such cases a complete deraignment of title by the complainant from a state grant or common source of title shall not be required as in ejectment cases, but it shall be sufficient to establish title in complainant where the complainant proves clearly that the complainant is the true owner of the lands described in the complainant's bill.

T.C.A. § 16-11-106 (1994). Under this section, the party seeking to establish title to property must prove either that he owns or has become entitled to ownership of the disputed land by clear proof. *See Ozment v. Rice*, 1986 WL 7867, at *2 (Tenn. Ct. App. 1986) (citing *Carr v. Wilbanks*, 324 S.W.2d 786, 792 (Tenn. Ct. App. 1958)). The complainant bears the burden of proving his ownership in disputed property by a preponderance of the evidence. *See Boyd v. Ducktown Chemical & Iron Co.*, 89 S.W.2d 360, 363-64 (Tenn. Ct. App. 1935). We agree with the trial court that, in the case at bar, Plaintiffs have failed to carry their burden.

Plaintiffs first attempt to prove that they have record title by showing that they have paid taxes on the disputed property and that the property assessor's records showed them to be owners of a parcel measuring 50' by 100'. Although this Court has held that a tax assessor's map may serve to establish which parcels a party paid taxes on, such a map should not be used as a means of establishing boundary lines. *See Whitworth v. Hutchinson*, 731 S.W.2d 915, 917 (Tenn. Ct. App. 1986).

In his testimony at trial, the Fayette County Assessor of Property indicated that the tax map Plaintiffs introduced at trial incorrectly represented the dimensions of <u>all</u> the parcels on the street block in question. The Assessor further testified that he had re-plotted the parcels, and that Plaintiffs' parcel was only 25' wide. When Plaintiffs' attorney questioned the Assessor about where he began plotting the parcels, the Assessor testified that he started at the curb, rather than in the centerline of the street.

Plaintiffs' witness, Wesley Ashworth, testified that he surveyed the property in question. Mr. Ashworth testified that he determined the location and width of Plaintiffs' property by reviewing documents in Plaintiffs' chain of title and with reference to surveys and property descriptions of the surrounding properties. However, Mr. Ashworth admitted that the call, "Beginning at the N.W. corner of road" in the deed describing the Reed Property was ambiguous.

Mr. Ashworth testified that, by starting to measure the Reed Property from the centerline of Second Street and then the Defendants' property, he was able to determine the location and size of Plaintiffs' lot. He further testified that the centerline starting point was correct because it was common practice to start at the centerline of the road in rural property descriptions dating back to the 1900's. On cross examination, however, Mr. Ashworth admitted that the survey his firm made of the Rossville Savings Bank Property at the east corner of the block in question did not start at the centerline of Main Street or Front Street. By effectively moving both the Defendants' property and the Reed Property approximately 25' west of the historic boundary, Mr. Ashworth's testimony placed both the driveway serving the Reed Property and the Defendants' driveway on the Defendants' property.

The claimed size of Plaintiffs' lot is also not in accord with certain monuments on the undisputed area of the lot. For example, there is an old concrete slab centered on the eastern half of Plaintiffs' property. Plaintiffs claim this is the "Nebhut storehouse" the Defendants' deed description refers to. However, there appears to be no clear proof that the slab is located where the storehouse once stood. Defendants point out that if Plaintiffs' predecessors in interest owned the

entire 50' width Plaintiffs claim, it is unlikely they would have constructed the storehouse on only the eastern half of the lot. Adding to the confusion is a sizeable privet hedge located at about halfway between what Plaintiffs claim as the western and eastern borders of their lot. It is conceivable that Defendants' predecessors in interest planted this hedge at the boundary line as a means of visually screening off their property, since the proof established that they maintained and utilized the property up to the hedge.

Particularly troubling is the starting point in the deed description of the Reed Property which purports to begin at the northwest corner of what is now Second Street. Mr. Ashworth described this as ambiguous, and Plaintiffs' witness, Clyde M. Crutchfield, Esq., described this call as, "unbelievably ambiguous." We agree. We see no "northwest corner" at all on the maps which are part of the record, because Front Street appears to dead end at Second Street. We also find it hard to understand how, even if there were a northwest corner, the Reed Property description would begin there, across Second Street from their property. It is clear that the first call is east with the street and the description continues to closure.

The trial court found that there is sufficient evidence to support a finding of record title in the Defendants, and we concur in that finding. However, if there is confusion concerning record title, we believe there is clarity as to the Defendants' alternative claim that they own the property by adverse possession.

Under a theory of adverse possession, Defendants must prove by clear and positive evidence that they have occupied the disputed property for the requisite time and in the requisite manner so as to bar the real title. *See Whitworth*, 731 S.W.2d at 917. As to the requirement of "possession", the party asserting the claim must show actual possession which is adverse, continuous, open and notorious for the prescriptive period. *See Whitworth*, 731 S.W.2d at 917. Actual possession depends upon the use to which the property at issue is adapted and may exist even in the absence of actual occupation or cultivation. *See Blankenship v. Blankenship*, 658 S.W.2d 125, 127 (Tenn. Ct. App. 1983). However, "[t]he acts relied upon must be of such a character as to leave no doubt of claim of ownership by adverse possession and to give notice to the public of the possession and the claim." *Id.*

We believe there is substantial evidence that Defendants "possessed" the disputed property so as to satisfy this first requirement. The record indicates that the Defendants and their predecessors regularly mowed the grass on the disputed area up to the privet hedge. Defendants also presented evidence that they planted flower beds on the disputed property and placed a bird bath there, as well. Mr. McDaniel testified that he undertook some landscaping and planting on both the west and east sides of his home. Mr. McDaniel explained that, when he wanted to landscape to the west of his property line, he asked for the Reeds' permission before starting work. He then explained that, "I didn't [ask for permission] on the east side 'cause I bought that."

There is also ample evidence in the record that other parties treated the disputed area as belonging to the McDaniels or their predecessors. The side-by-side Reed and McDaniel driveways would be incorrectly placed if Plaintiffs' assertions are correct. The location of the curb cuts for Reeds' and McDaniels' driveways is evidence that the Town of Rossville placed the western boundary of the McDaniels' property where the McDaniels claim it should be. Additionally,

Plaintiffs' witness Clay Saunders testified on cross-examination that, based upon his observations of the use of the property by McDaniels' predecessors, he assumed that the disputed area was part of what is now the McDaniel Property. The trial court found that the McDaniels had title by their adverse possession and that of their predecessors in title for 30 years.

Tennessee permits "tacking" between a party and his predecessors in title in order to meet the requisite period of possession. *See Arrowood v. Williams*, 586 S.W.2d 131, 135 (Tenn. Ct. App. 1979); *Derryberry v. Ledford*, 506 S.W.2d 152, 156 (Tenn. Ct. App. 1973). Plaintiffs claim there is no privity between the Defendants and their predecessors in interest and that Defendants cannot tack their claim to the Rives'. We disagree. Defendants presented positive proof that they obtained their title from the Rives, and that the Rives also recognized the privet hedge as the eastern boundary line of their property. *See Minor v. Belk*, 360 S.W.2d 477, 484 (Tenn. Ct. App. 1962). Based on the fact that the Rives had been in continuous possession of the property since they acquired it in 1910 and that the house served as the Rives' family residence from that time until the McDaniels purchased it, we see no reason why the McDaniels may not tack their adverse possession claim to that of their predecessors. Based upon the record in this case, we concur with the decision of the trial court that the Defendants have clearly proven the requirements of adverse possession.

On appeal, Plaintiffs argue that the Defendants failed to properly raise the affirmative defense of common law adverse possession in their pleadings and, therefore, waived that defense. This argument fails for several reasons. First, although the Defendants did not specifically invoke "common law adverse possession," Paragraph 10 of Defendants' answer specifically sets out adverse possession as a defense. Second, the record establishes that the parties put on extensive proof regarding possession and use of the disputed property. Under Rule 15.02 of the Tennessee Rules of Civil Procedure, "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tenn. R. Civ. P. 15.02 (2000).

From the foregoing, we conclude that the evidence does not preponderate against the findings of the trial court.

The final decree of the trial court is affirmed, and this case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellants, Taylor Mehrhoff Company, John B. Taylor and Stan Mehrhoff, individually, and doing business as Taylor Mehrhoff Company, and their sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.